**KIMBERLY–CLARK CORPORATION, BROWN–BRIDGE DIVISION, Plaintiff,**

v.

**EASTERN FINE PAPER, INC., Defendant.**

**Civ. No. 79–51–B.**

United States District Court, D. Maine.

Sept. 14, 1981.
Supplemental Opinion Oct. 28, 1981.

Sumner T. Bernstein, Gregory A. Tselikis, Portland, Me., Nathanial R. French, Dayton, Ohio, Mitchell H. Kaplan, Kenneth Laurence, Boston, Mass., Richard A. Killworth, Dayton, Ohio, for plaintiff.

Paul M. Brown, Robert E. Kosinski, New York City, Arnold L. Veague, Bangor, Me., for defendant.

OPINION AND ORDER OF THE COURT

TIMBERS, Circuit Judge: *

This is a patent action. The patent at issue is one involving the binder used in the manufacture of dry gummed paper. The claims of the parties are those which have come to be recognized as standard in a patent action.

* Sitting by designation.

After a five day bench trial on the merits at Portland in December 1980 before the undersigned, and the case having been fully briefed and argued by counsel, the Court renders the following opinion which constitutes the findings of fact and conclusions of law required by Fed.R.Civ.P. 52(a).

## I.

## QUESTIONS PRESENTED

In these actions commenced by the former Brown-Bridge Mills, Inc. (Civ. No. 75–36–B) and its present corporate owner, Kimberly-Clark Corporation (Civ. No. 79–51–B),[1] for enforcement of plaintiff's rights under a patent, the essential questions presented are whether defendant Eastern Fine Paper, Inc. is infringing plaintiff's patent and, if so, whether the patent is valid and enforceable.

Related claims of patent misuse and unfair trade practices, as well as claims under the antitrust laws, were severed for a separate trial to follow determination of the issues presented herein. (Mitchell, J.)[2]

## II.

## JURISDICTION

This Court has subject matter jurisdiction over this patent action pursuant to 28 U.S.C. §§ 1338(a), 2201, and 2202 (1976). Venue is properly laid in this District pursuant to 28 U.S.C. §§ 1391(b) and 1391(c) (1976), and in the Northern Division of this District pursuant to 28 U.S.C. § 1400(b) (1976). Moreover, no objection has been made to venue or personal jurisdiction. Fed.R.Civ.P. 12(h).

## III.

## PRIOR PROCEEDINGS

The Brown-Bridge Mills, Inc. filed the original complaint in Civ. No. 75–36–B on May 2, 1975 alleging, *inter alia,* that plaintiff was the assignee of United States Patent No. 3,202,539 (the Holt patent)[3] and that defendant had infringed and would continue to infringe the Holt patent by making, using and selling gummed paper within the scope of the patent. Plaintiff sought damages, injunctive relief, reasonable attorney's fees and costs.

Defendant's answer, *inter alia,* denied the material allegations of the complaint, alleged as an affirmative defense the invalidity of the Holt patent for "one or more" of several reasons and counterclaimed for a declaratory judgment as to the invalidity of the patent and noninfringement by defendant.

Discovery proceeded through the summer of 1976. On September 8, 1976 the Court (Gignoux, J.) granted defendant's motion to file a second counterclaim alleging the failure of the Holt applicants to disclose to the Patent Office material facts which, if disclosed, would have caused the Office to deny the Holt Patent application.

Following further discovery, plaintiff moved to dismiss the complaint and for partial summary judgment on defendant's counterclaims. Plaintiff sought this volun-

---

1. Civ. No. 79–51–B was consolidated with Civ. No. 75–36–B. The consolidated action was tried as Civ. No. 79–51–B and will be treated as a single action in this opinion as it was at trial. Likewise, as at trial, this opinion will refer throughout to a single plaintiff, Kimberly-Clark Corporation.

2. Three judges have conducted various proceedings in this action:
   Hon. Edward T. Gignoux, Chief Judge, United States District Court for the District of Maine (Gignoux, J.).
   Hon. George J. Mitchell, formerly District Judge, United States District Court for the District of Maine (Mitchell, J.).

   Hon. William H. Timbers, Circuit Judge, United States Court of Appeals for the Second Circuit, sitting by designation (Timbers, J.).

3. DX2.
   Record references in this opinion will be as follows:
   PX__. . .
   Plaintiff's Exhibit
   DX__. . .
   Defendant's Exhibit
   Tr. . . .
   Trial Transcript
   ATr. . . .
   Transcript of Post-Trial Argument

tary dismissal for the reason that it had learned, as a result of discovery, that the binder formulation then used by defendant in the manufacture of its gummed paper products did not infringe the Holt patent. Plaintiff asserted, however, its belief that formulations previously used by defendant had infringed the Holt patent. By an order dated May 10, 1978 and the judgment entered thereon on May 17, 1978 the Court (Gignoux, J.) dismissed plaintiff's complaint with prejudice to any claim that the Holt patent is infringed by any product having "solubility characteristics above those of a compound having a PVA:PVP ratio of 75:25"; with prejudice to any claim for past infringement by any other products of defendant; and with prejudice to any claim of past antitrust violations by defendant. Plaintiff's motion for partial summary judgment was denied.

A final pretrial conference was scheduled for December 31, 1978. On March 14, 1979, however, the Court extended the time for discovery until June 30, 1979.

On April 6, 1979 plaintiff filed its second complaint which, together with defendant's answer thereto and defendant's counterclaim to the first complaint, presented the issues tried to the Court and which are the subject of this opinion. The second complaint alleged, *inter alia*, that tests performed "within the past several months" on samples of defendant's finished paper product indicated that the binder then in use by defendant infringed the Holt patent. Accordingly, plaintiff sought injunctive relief, actual and punitive damages, reasonable attorney's fees and costs. Defendant denied the material allegations of the complaint and counterclaimed for a judgment of noninfringement and invalidity.

At a pretrial conference held on June 22, 1979 the Court (Gignoux, J.) ordered that the two actions be consolidated; that defendant's answer to the new complaint incorporate the counterclaims asserted by de-

fendant in the earlier action; and that thereafter the consolidated action should proceed upon the basis of the complaint and answer in the new action, Civ. No. 79–51–B. The parties were ordered to complete discovery and to be ready for a final pretrial conference by December 31, 1979.

The next pretrial conference, however, was held on February 13, 1980, following which the Court (Mitchell, J.) granted plaintiff's motion for a separate trial of (1) the patent validity and infringement issues and, thereafter, of (2) the patent misuse, unfair trade practice and antitrust issues.

A final pretrial conference with respect to the patent validity and infringement issues was scheduled for September 18, 1980, with trial to follow on October 20, 1980. On September 8, 1980, however, the Court (Gignoux, J.) extended the time for discovery with respect to the patent validity and infringement issues to November 1, 1980. The final pretrial conference ultimately was held on November 18, 1980 at the New York chambers of the undersigned by agreement of counsel.

The case was tried to the Court at Portland on December 8–12, 1980 (Timbers, J.).

## IV.

### PARTIES

Both plaintiff and defendant are and have been engaged in the business of selling various paper products including dry gummed paper.[4] Dry gummed paper is used for products such as labels and stamps which are printed on one side and on the other side have a dry adhesive coating capable of becoming sticky when moistened with water so that the product can be affixed to another surface.[5]

On August 24, 1965 United States Patent No. 3,202,539 (the Holt patent) was granted to The Brown-Bridge Mills, Inc.[6] Plaintiff alleges, and defendant does not dispute,

4. Complaint, ¶¶ 9, 10; Answer and Counterclaim, ¶¶ 9, 10.

5. Complaint, ¶ 8; Answer and Counterclaim, ¶ 8.

6. Complaint, ¶ 11; Answer and Counterclaim, ¶ 11.

that on December 31, 1977 The Brown-Bridge Mills, Inc. was merged into Kimberly-Clark Corporation and that since that date Kimberly-Clark Corporation has been the owner of all right, title and interest in and to the Holt patent, including the right to recover for any infringement thereof.

Defendant seeks, by way of counterclaim, a judgment dismissing the complaint and holding the Holt patent invalid, void and unenforceable; enjoining plaintiff from representing to any person that defendant has infringed or is infringing the Holt patent; and recovery of reasonable attorneys' fees and costs.

## V.

### SUMMARY OF ISSUES

As the result of the prior proceedings outlined above, there emerged the following issues which were tried to the Court and to which this opinion is addressed.

Plaintiff alleges, and defendant denies, that defendant knowingly, willfully and deliberately has infringed the Holt patent by manufacturing and selling dry gummed paper embodying the claims of the Holt patent.[7] Specifically, plaintiff alleges that the binder used by defendant to affix the adhesive coating to the base paper falls within the claims of the Holt patent.[8]

Defendant, in addition to denying the material allegations of the complaint, alleges by way of affirmative defense that the Holt patent is invalid, void and unenforceable on the grounds of (a) prior use; (b) prior patent; (c) lack of invention of the subject matter claimed by the applicants for the Holt patent; (d) prior invention; (e) obviousness; (f) indefiniteness of the claims; and (g) fraud on the Patent Office by failure to disclose relevant information.

## VI.

### INFRINGEMENT

The first question for determination is whether the binder used by defendant since approximately July 1978 in the manufacture of dry gummed paper infringes the Holt patent.

The Holt patent is entitled "Non-Curling Gummed Paper". The invention disclosed therein is said to relate "to the production of gummed paper having thereon an adhesive coating of the remoistenable type."[9] The binder material currently being used commercially by defendant is a substance known as "3RB–50". It is composed of 90 parts of polyvinyl acetate ("PVA") and 10 parts of polyvinyl pyrollidone ("PVP").[10]

It is plaintiff's position that the Holt patent provides specific coverage on dry gummed paper[11] incorporating any binder which is "insoluble in water" and having the other characteristics called for by the Holt patent claims. Plaintiff further asserts that 3RB–50 is such a binder.

It is defendant's position that the invention described in the Holt patent is a "meth-

---

7. Complaint, ¶ 25; Answer, ¶ 25.

8. Complaint, ¶ 24.

9. DX2, col. 1, lines 10–12.

10. Since this action was commenced, defendant has been manufacturing a product by the Davis "solvent process", using as a binder 3RB–50 manufactured by Nashua and another binder with similar properties. Defendant's Pre-Trial Brief at 21. The parties agree that binder formulation 3RB–50 is a co-polymer of polyvinyl acetate and polyvinyl pyrollidone in a ratio of 90 parts PVA to 10 parts PVP. Defendant's Pre-Trial Brief at 16; Plaintiff's Pre-Trial Brief at 6–7.

11. The paper industry draws a distinction between "dry" and "conventional" gummed paper. The adhesive coating on conventional gummed paper is a dried water solution of the gum itself. The adhesive coating on dry gummed paper consists of separate particles of water soluble gum dispersed in a resin binder matrix which adheres them to the paper in such a manner that they can be activated by moistening in the same way as conventional gummed paper. The practical difference between the two products is that the dried gum coating on conventional gummed paper gives the coated paper a strong tendency to curl, necessitating a mechanical decurling stage in the manufacturing process, whereas dry gummed paper is naturally flat and does not require mechanical decurling.

od of forming the adhesive coating of glue particles and resin binder on the paper base" by an electrostatic process, and that plaintiff's only purpose in specifying the use of an insoluble binder was to distinguish its invention from that of United States Patent No. 2,793,966 (the "Davis" patent) [12] which used a water soluble binder. In the alternative, defendant contends that, even if the Holt patent does cover dry gummed paper made with insoluble binders, defendant's product still does not infringe the patent since 3RB–50 is not an insoluble binder.

Thus, two questions are presented on the infringement aspect of this case. First, the Court must decide whether the Holt patent teaches only a method of applying adhesive coating to base paper or whether it also teaches the use of particular chemical compositions for binder. Second, if the Court decides that the Holt patent does cover particular compositions for binder, it then must determine whether 3RB–50 falls within the product claims of the Holt patent.

### (A) Product or Process

Defendant contends that the Holt patent covers only a method of producing dry gummed paper and that any suggestions as to appropriate binder materials set forth in the patent are not part of the claimed invention. In support of this contention, defendant's expert witness, Dr. Salvatore Stivala, testified that the Holt patent had no objective other than the electrostatic method of depositing particles of adhesive on paper, and that both soluble and insoluble binders could be used with the process.[13] The "single objective" interpretation of the patent finds some support in the language of the patent itself.[14] Certainly, the expressly stated objects of the patent are concerned with method.

Nevertheless, a concern with product, and not merely with process, is evidenced throughout the patent. For example, the patented invention is described as providing a solution to the problematic tendency of the gummed paper existing in the prior art to curl upon exposure to humidity. The invention proposes to eliminate such curl by use of an "adhesive coating ... of a composite character which *inherently* prevents curling even if the remoistenable component of the coating does absorb moisture".[15] The patent also states that water-insoluble binders are likely to have "wider applicability" since they are "*inherently* less sensitive to humidity".[16] That the applicants for the Holt patent must have regarded the invention as including a product component is further indicated by the following language:

"If it is desired to practice the invention as outlined above *with the aid of a solvent or solvent vapor* to fuse the binder material on the sheet, it is generally considerably easier to find a solvent which will not affect the water-soluble glue [in the case of a water-insoluble binder material] than in the case of a binder material

12. PX 26.

13. Tr. at 495, 496. Defendant's expert, Robert Gottschalk, testified to similar effect. Tr. at 592–594.

14. For example:
"It is a *primary object* of the invention to provide a new and improved *method of producing* a remoistenable gummed sheet characterized by the ability to remain substantially flat over a wide range of varying humidity conditions...." DX2, col. 3, lines 9–13. (emphasis added)
"It is *particularly an object* of the invention to provide a *method* producing [sic] a gummed sheet having the characteristics outlined above...." DX2, col. 3, lines 24–26 (emphasis added).
"The method of the invention is *not limited* to use with binder materials which are *water-insoluble,* and it can be practiced with equal facility in conjunction with *water-soluble* binder materials...." DX2, col. 2, lines 67–70. (emphasis added)
"Furthermore, the invention offers the same advantages discussed above when practiced with water-soluble binder materials." DX2, col. 3, lines 1–3. (emphasis added).

15. DX2, col. 1, lines 44–47 (emphasis added).

16. DX2, col. 4, lines 1, 4 (emphasis added).

and glue which are both soluble in water."[17]

Since the *process* aspect of the Holt patent purported to overcome the difficulties associated with the solvent method of applying adhesive coatings to paper, the reference in the patent to the possibility of practicing the claimed invention by the older method suggests that the inventors regarded the claims as including something beyond the electro-static process.

But inferences as to the intended scope of the patent drawn from the disclosure sections have no legal effect. In order to determine the actual scope of the patent, we must turn to the claims.[18]

■ Each of the five claims of the Holt patent specifies the use of a water-insoluble binder. The claims furnish neither a definition of nor a test for "insolubility". The absence of a definition necessarily renders the claims somewhat ambiguous with respect to the term "insoluble".[19]

The Court declines to find, however, that the mere use of the unadorned term renders the claims indefinite within the meaning of the second paragraph of 35 U.S.C. § 112 (1976).[20] It is well established that claims must be interpreted by reference to the technology to which the claimed subject matter pertains, and for that purpose the Court may consult the specifications. *N.V. Maatschappij Voor Industriele Waarden v. A.O. Smith Corp.*, 590 F.2d 415 (2 Cir.1978); *In re Salem*, 553 F.2d 676 (C.C.P.A.1977); *Ortho Pharmaceutical Corp. v. American Hospital Supply Corp.*, 534 F.2d 89 (7 Cir. 1976); *Hazeltine Research, Inc. v. Firestone Tire and Rubber Co.*, 468 F.2d 1277 (4 Cir. 1972); *Musher Foundation, Inc. v. Alba Trading Co.*, 150 F.2d 885 (2 Cir.) (L. Hand, J.), *cert. denied*, 326 U.S. 770 (1945).

In order to determine whether the Holt patent includes a product claim for insoluble binder, the Court must examine the disclosure portion of the patent not only for the purpose just mentioned—that is, to determine whether it provides a definition of the term "insoluble"—but also for the purpose of determining whether the patent meets the "enabling" requirement of the first paragraph of 35 U.S.C. § 112 (1976).[21]

17. DX2, col. 4, lines 6–12 (emphasis added).

18. The claims define the invention for the purpose of determining infringement. 2 Chisum, Patents § 8.01, at 8–3 (1981). *In re Ehrreich*, 590 F.2d 902 (C.C.P.A.1979); *Plastic Container Corp. v. Continental Plastics of Oklahoma, Inc.*, 607 F.2d 885 (10 Cir.1979), *cert. denied*, 444 U.S. 1018 (1980).

19. Defendant argues that the term "insoluble" has a precise meaning in scientific circles. According to defendant's expert witness, a substance is insoluble if there is *no* detectable dissolution. Tr. at 504 (testimony of Dr. Stivala). Plaintiff argues that the term "insoluble" is used in a "practical", rather than an "absolute", sense in the Holt patent. PX 147 at 11. On cross-examination plaintiff's expert testified that a material may be termed insoluble if there is *any* failure to dissolve. Tr. at 410 (testimony of Dr. Dalzell).

Courts will not apply scientific or dictionary definitions indiscriminately in interpreting patent claims. The better course is to look to the art or technology to which the claimed subject matter pertains and to give due consideration to the interpretation that one of ordinary skill in the art would give to the technology in question. *N.V. Maatschappij Voor Industriele Waarden v. A.O. Smith Corp.*, 590 F.2d 415, 421 (2 Cir.1978); *In re Salem*, 553 F.2d 676

(C.C.P.A.1977). Since plaintiff has disclaimed the only unambiguous definition of the term that has been suggested, the Court must determine the meaning of the term by reference to the pertinent art.

The Court agrees with plaintiff's expert, Dr. Dalzell, that the patent implies in the term "insoluble" the qualification "substantially". Tr. at 411. But, as will appear, this determination does not end the search for meaning since it still is necessary to determine what the patent means by "substantially insoluble".

20. The second paragraph of 35 U.S.C. § 112 (1976) states the requirement of definiteness of claims:

"The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention."

21. The first paragraph of 35 U.S.C. § 112 (1976) provides:

"The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention."

The two questions are related: if the patent sufficiently discloses a particular insoluble binder or class of binders—that is, if the enabling requirement is met—then presumably one may infer from the solubility characteristics of the binder or binders disclosed the definition of the term "insoluble" as it is used in the patent.[22]

The Holt patent sets forth particular binder formulae in Examples I–VIII. None of the Examples sets forth the particular binder formula used by defendant. Thus, the immediate questions are (1) whether any of the Examples sets forth binder formulae that reasonably may be termed water-insoluble; and (2) if so, what inferences may be drawn therefrom about the meaning of the term insoluble as it is used in the Holt patent claims. If the Examples adequately disclose an insoluble binder or binders, the Court must conclude that the patent applicants intended to state a product claim.

The text of the Holt patent indicates that the inventors considered the formulae of Examples I, IV and V to be water-insoluble.[23] Defendant does not dispute this characterization of the formulae. The Court therefore is willing to accept this characterization, that is, the Court will assume that the formulae in fact are insoluble within some reasonable definition of the term, and that the patent's disclosure adequately supports a product claim for insoluble binder.[24]

## (B) Whether 3RB–50 Falls Within the Product Claim of the Holt Patent

■ Assuming further that the specification of three water-insoluble binders permits plaintiff to set up a generic[25] claim to insoluble binders, the next question is what definitional limits must be read into plaintiff's use of the term "insoluble" from the characteristics of the three water-insoluble binders disclosed in its patent.[26] The Court concludes that the specifications of the Holt patent define its claims so as to prevent plaintiff from treating as insoluble for infringement purposes any binder having greater water solubility than the one of the three specified water-insoluble binders which has the greatest water solubility. Equivalently, plaintiff may treat as insoluble for infringement purposes any binder having water solubility equal to or less than the one of the three specified binders which has the greatest water solubility.[27]

22. Plaintiff's expert witness, Mr. Dann, offered the same reasoning on cross-examination. Tr. at 1126.

23. The text of the patent also indicates that the patentee considers the formulae of Examples VI and VII to be water soluble. The patent does not characterize the formulae of Examples II, III and VIII as either soluble or insoluble.

24. Although the Court here concludes that the Holt patent intends to state a product claim for insoluble binder, consideration of whether that product claim is sufficiently definite to meet the requirements of the second paragraph of § 112 is deferred to the section of this opinion on Validity, infra.

25. Plaintiff argues that the Holt patent claims are generic to water-insoluble binders. ATr. at 73–74. The consequence of such a finding, according to plaintiff, is that all persons other than the patentee and its licensees are prevented from using any water-insoluble binder suitable for use with the electrostatic method, regardless of whether the other person actually uses the electrostatic method and regardless of whether the binder in question had been invented by the Holt inventors at the time of issuance of the Holt patent or whether it subsequently was invented by either the Holt inventors or others.

26. As indicated above, this form of definition must be resorted to since plaintiff has failed to furnish any other definition.

27. At trial plaintiff adduced credible evidence indicating that, by the particular test employed, the solubility of defendant's binder ranged from 19.0 percent to 24.2 percent in tests of various samples of binder that had been extracted from samples of defendant's product. PX 147 at 7. Plaintiff contends that the tests demonstrate that "the binders extracted from the samples . . . are insoluble in water as evidenced by the fact that the films are intact and a major portion of the materials remain on the foil after immersion in water for twenty-two hours." (emphasis added). PX 147 at 10. The Court observes that this conclusion contains an implicit definition of the term "insoluble"; that is, a material is insoluble if a "major portion" of it does not dissolve under the given conditions. The Court is unwilling to adopt this definition of insolubility for the purpose of determining infringement, for two reasons. First, plaintiff

The Court holds, however, that plaintiff has failed to establish the solubility characteristics of the specified binders. Since there is no dispute that the patent covers at least the three insoluble binders set forth in the Examples, plaintiff's omission in itself does not render its product claim invalid. Nevertheless, such omission precludes the Court from determining whether any binder other than the ones specified infringes by virtue of its solubility characteristics.

The Court is unwilling to assign to the term "insoluble" the absolute or scientific definition in the absence of evidence that such usage was intended and over the objection of plaintiff that such usage was not intended. Plaintiff's failure to supply any other definition or to establish the solubility characteristics of its specified binders in effect renders the term meaningless. Under these circumstances, the Court is unable to determine whether defendant's binder falls within the product claim of the Holt patent.

In short, plaintiff has not sustained its burden of proving infringement. *C.H. Dexter & Sons, Inc. v. Kimberly-Clark Corp.,* 292 F.2d 371, 373 (1 Cir.1961); *Harries v. Air King Products Co.,* 183 F.2d 158 (2 Cir.1950). Accordingly, on the infringement issue, the Court holds in favor of defendant.

## VII.

### VALIDITY

■ Since the validity of a patent is a question of greater public importance than infringement, the better practice usually is to inquire fully into validity even if it is possible to dispose of a case on the ground of non-infringement. *Sinclair & Carroll Co. v. Interchemical Corp.,* 325 U.S. 327, 330 (1945). The Court, however, may not hold a patent valid if it is not infringed, for to do so would be to decide a hypothetical case. *Altbater v. Freeman,* 319 U.S. 359 (1943). *See Deposit Guaranty National Bank v. Roper,* 445 U.S. 326, 335–36 n. 7 (1980) (correct to inquire fully into validity of a patent but incorrect to adjudge the patent valid after ruling there has been no infringement). If patent infringement and validity were the only issues in the instant case, the Court would examine the validity issues solely for the purpose of determining whether a judgment of *invalidity* should be entered. *Wabash Corp. v. Ross Electric Corp.,* 187 F.2d 577 (2 Cir.) (majority opinion upholding finding of validity where no infringement found and where finding was not incorporated in judgment), *cert. denied,* 342 U.S. 820 (1951). If the case could be disposed of entirely on the ground of non-infringement, the Court's obligation to the public interest would be satisfied by a determination of the question whether the Holt patent is so "evidently invalid" that it should not be allowed to stand as a "scarecrow". *Harries v. Air King Products Co., supra;* accord, *Nyyssonen v. Bendix Corp.,* 342 F.2d 531 (1 Cir.), *cert. denied,* 382 U.S. 847 (1965).

■ In the instant case, however, defendant has asserted counterclaims under the

has not demonstrated that it is the definition employed in the Holt patent. Plaintiff has not shown that any one of the so-called "insoluble" binders specified in the Holt patent is actually soluble to the extent of 24 percent. Neither has plaintiff demonstrated that a binder 24 percent soluble in water has the characteristics claimed for insoluble binders in the Holt patent, i.e., that they *inherently* prevent curling, *see* text at n. 15, *supra,* and that they are *inherently* "less" sensitive to humidity, *see* text at n. 16, *supra.* Second, Robert B. Reif, one of the co-inventors of the Holt patent, testified that, in the context of the art, a material was water-insoluble if there was no significant change in the amount of material when it was immersed in water. Tr. at 954. The Court is unwilling to assume that a change of 24 percent in the amount of material is insignificant. *Cf.* the interpretation of Frederick Holt, the other co-inventor, who understood that substances were either completely soluble or were some percent insoluble. Tr. at 1101. Thus, the definitions offered by plaintiff's witnesses appear to be inconsistent.

The Court therefore is forced to conclude that the sole objective delimitation of the term "insoluble" in the Holt patent resides in the solubilities of the so-called insoluble binders actually set forth in the Holt disclosures. Only the possibility of invoking such a definition-by-example distinguishes the present case from *Norton Co. v. Bendix Corp.,* 449 F.2d 553 (2 Cir. 1971), which held invalid for indefiniteness a patent claim containing a term defined inconsistently by the patentee's witnesses.

antitrust laws of the United States. Resolution of the counterclaims will require a determination of the validity of the Holt patent. Thus, the question of patent validity presented to this Court is in no sense hypothetical. The Court therefore will inquire fully into the question of validity and render judgment in accordance with its conclusions.

Before examining each of the grounds on which invalidity is asserted, two preliminary observations are in order.

■ First, plaintiff contends that the statutory presumption of validity created in 35 U.S.C. § 282 (1976) is strengthened by the previous consideration in prior Patent Office proceedings of the questions now raised. In this Circuit prior Patent Office proceedings enhance the presumption only if there are sufficient indicia of actual Patent Office study of the specific issues raised in a subsequent proceeding. *Forbo Design Corp. v. Raytheon Corp.*, 532 F.2d 758 (1 Cir.1976).

■ Second, a heavy burden of proof is imposed on defendant in undertaking to rebut the statutory presumption of validity created in § 282. While counsel have not directed the Court's attention to any specific formulation of this burden in this Circuit, the Court is satisfied that more than a preponderance of the evidence is required to establish the invalidity of a patent. In *Radio Corporation of America v. Radio Engineering Laboratories, Inc.*, 293 U.S. 1 (1934), the question was whether the patentee was the first inventor. Justice Cardozo reviewed the several formulations of the burden of proof that had been applied by other courts and remarked: "The courts

were not defining a standard in terms of scientific accuracy or literal precision, but were offering counsel and suggestion to guide the course of judgment." *Id.* at 8. In that spirit, this Court declines to adopt any particular phrase as a talismanic guide to evaluating the evidence before it. The Court recognizes that chaos would result if a patent were to be overturned merely because a "dubious preponderance" of the evidence suggested its invalidity. *Id.* at 8. Defendant's claims of invalidity therefore must be rejected unless "clear and satisfactory" evidence is found to support them. *Id.* at 9.

(A) *Prior Use; Lack of Invention of the Subject Matter; Prior Invention*

■ Defendant contends that the subject matter of the Holt patent—that is, remoistenable gummed paper using a binder "by itself insoluble in water"—was invented and reduced to practice or conceived and diligently pursued by Stein-Hall & Co. and Nashua before August 31, 1956, the earliest date of invention asserted by plaintiff. If defendant is correct, the patent would be invalid under 35 U.S.C. § 102(g) (1976).[28] Defendant further contends that Nashua's public use or sale of remoistenable gummed paper products using an insoluble binder prior to December 17, 1956 invalidates the Holt patent under 35 U.S.C. § 102(b) (1976), since such use would have occurred more than one year before the date of the Holt patent application, December 17, 1957.[29]

In support of these contentions defendant points to plant runs by Nashua that purportedly yielded satisfactory results with

**28.** 35 U.S.C. § 102(g) (1976), in relevant part, provides:

"§ 102—A person shall be entitled to a patent unless—

.    .    .    .    .

(g) before the applicant's invention thereof the invention was made in this country by another who had not abandoned, suppressed, or concealed it. In determining priority of invention there shall be considered not only the respective dates of conception and reduction to practice of the invention, but also the reasonable diligence of one who was first to

conceive and last to reduce to practice, from a time prior to conception by the other."

**29.** 35 U.S.C. § 102(b) (1976), in relevant part, provides:

"§ 102—A person shall be entitled to a patent unless—

.    .    .    .    .

(b) the invention was ... in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States...."

the use of "65–54" [30] binder in July, October and November 1956, and to sales of 65–54 binder in the fall of 1956. Defendant argues that, since 65–54 is 16.4 per cent soluble in water, it therefore is "insoluble" within plaintiff's definition.

Plaintiff contends that defendant cannot rely on Nashua's experience with 65–54 since that binder is water-soluble. Plaintiff further contends that public use of Davac paper made with 3RB–50 did not begin until February, 1957, less than one year before the date of the Holt application.

Turning first to defendant's contentions concerning 65–54, the Court finds that defendant has presented some evidence that the water solubility of 65–54 is 16.4 per cent. Plaintiff has adduced some evidence that 90.5 per cent of 65–54 goes into "colloidal suspension", PX 102, or "colloidal suspension or solution", PX 144. Plaintiff has not enlightened the Court as to the meaning of the term "colloidal suspension". Defendant's testing service apparently found at first that 65–54 was water-soluble to the extent of 91.3 per cent, but, having reason to believe that the test employed was inappropriate for the materials concerned, the testing service performed a second test which it found more satisfactory. That test resulted in the finding that 65–54 was 16.4 per cent soluble. DX 168. The report of that result provides some explanation for the difference between the two tests and the technical basis for the belief that the test yielding the lower result for percent solubility was more accurate. The Court therefore accepts defendant's contention that the solubility of 65–54 is 16.4 per cent. The Court further holds that, because of the position it has taken with respect to the solubility of 3RB–50, plaintiff is estopped

from arguing that a material that is 16.4 per cent water-soluble is not insoluble within the meaning of the Holt patent.[31] On the basis of the evidence outlined above, the Court finds that defendant has proven that 65–54 is insoluble within the meaning of the Holt patent.

Defendant's contention that 65–54 binder was invented and reduced to practice by Stein-Hall and Nashua before August 31, 1956 is adequately supported by the record.[32] Plaintiff does not seriously dispute it. Since Stein-Hall and Nashua reduced the 65–54 binder to practice before August 31, 1956, the Holt applicants were not entitled to a generic patent for insoluble binder products. 35 U.S.C. § 102(g) (1976).

Defendant also contends that 65–54 binder was in public use or on sale in this country more than one year prior to December 17, 1957, the date of the Holt application. This claim also is supported by substantial evidence.[33] Plaintiff contends, however, that the sale of 65–54 binder by Stein-Hall to Nashua, and by Nashua to others (after incorporating the binder into finished products) in the fall of 1956 constituted "semicommercial" rather than commercial production. The Court rejects plaintiff's contention since the production and sale of 20,000 pounds of paper treated with 65–54 binder clearly is more than de minimis. Even though a production run of 20,000 pounds may have been "semicommercial" as compared with Nashua's typical production for established products, that has no bearing on whether the product was "on sale". On the basis of this record, however, the Court is concerned that the production and sale of 65–54 may have fall-

**30.** "65–54" binder is composed of PVA and PVP in a ratio of 70:30.

**31.** Defendant also contends that plaintiff admitted the insolubility of 65–54 when it notified defendant in 1974 that one of defendant's products, Flash Seal # 2, infringed the Holt patent because it was water-insoluble. DX 179. Had defendant clearly established its claim that Flash Seal # 2 was the same product as 65–54, the Court would find this evidence highly persuasive. Although defendant did not support

its representation that Flash Seal # 2 was identical with 65–54, the evidence is entitled to some weight since plaintiff has not objected to defendant's claim that the two binders are chemically equivalent.

**32.** DX 126; 131; 133; 306 at 77–80; 307 at 41–51, 58–59.

**33.** DX 139; 140; 148; 306 at 103–103a; 307 at 62–63, 76.

en within the doctrine of "experimental use". *Atlas v. Eastern Air Lines, Inc.,* 311 F.2d 156 (1 Cir.1962), *cert. denied,* 373 U.S. 904 (1963); *In re Blaisdell,* 242 F.2d 779 (C.C.P.A.1957). *See generally* 2 Chisum, Patents, *supra,* at § 6.02[7]. Since defendant has not negated this possibility, the Court holds that defendant has failed to sustain its burden of proving invalidity by prior use or sale of 65–54 under § 102(b).

■ Defendant contends that, even if the plant runs of 65–54 binder in the fall of 1956 did not constitute a reduction to practice, the Holt patent nevertheless is invalid under the second sentence of 35 U.S.C. § 102(g) (1976) because of the prior conception by Nashua and Stein-Hall of insoluble binders and their diligent efforts to reduce the conception to practice. Those efforts culminated in large scale production of 3RB–50 in July 1957. Defendant contends that Stein-Hall had begun work on an insoluble binder containing PVA as early as August 1955, whereas the earliest invention (that is, reduction to practice) date claimed for the Holt patent is August 31, 1956.

Since the Court has held that the Holt patent is invalid under § 102(g) because of the reduction to practice by Stein-Hall and Nashua of 65–54 binder prior to August 31, 1956, it perhaps is unnecessary to address defendant's alternative contention. Nevertheless, in light of the considerations referred to above and in the interest of completeness, the Court rules as follows. The statute predicates nonpatentability (and therefore invalidity) on the prior conception of the invention by one who, though dili-

gent, achieves reduction to practice after the party seeking or claiming the patent. Defendant has failed to allege the conception date of the Holt invention. Therefore, even if the Court were to accept defendant's rather substantial proof that Stein-Hall and Nashua conceived and began work on binders using the insoluble material PVA in August 1955, and diligently pursued that work until a reduction to practice was achieved,[34] defendant's contention must fail for lack of proof that Stein-Hall's conception antedated Holt's conception.

In short, the Court holds that the Holt patent is invalid under § 102(g) by virtue of the prior invention of 65–54 binder.

**(B)** *Prior Patent*

■ Defendant also contends that the Holt patent is invalid under 35 U.S.C. §§ 102(e)[35] and 103[36] (1976) because it was anticipated by each of three prior patents. The Court turns to a consideration of the effect of each of these patents seriatim.

**(1)** *The Prior Patent*[37]

The Prior patent issued on September 17, 1963. The Prior application was filed on June 27, 1955, almost two and one-half years before the Holt application was filed. The Prior application was amended after the filing of the Holt application.

Defendant's expert witness testified that the disclosures set forth in column 1, lines 43–67, and in column 2, lines 6–26, of the Prior patent either fall within the claims of the Holt patent or render obvious the Holt

**34.** DX 116–119, 120, 121, 123, 126, 127, 133, 140, 147, 148, 150, 152, 166, 220.

**35.** 35 U.S.C. § 102(e) (1976), in relevant part, provides:

"§ 102—A person shall be entitled to a patent unless—

. . . . .

(e) the invention was described in a patent granted on an application for patent by another filed in the United States before the invention thereof by the applicant for patent...."

**36.** 35 U.S.C. § 103 (1976), in relevant part, provides:

"§ 103—A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains...."

**37.** The Prior Patent is United States Patent No. 3,104,179, PX 37.

disclosures. That testimony, if correct, would establish Prior as a bar to Holt under 35 U.S.C. §§ 102(e) and 103 (1976)—but only if the Prior patent constitutes prior art as against Holt.

The disclosures of Prior relied on by defendant were added to the Prior application after the filing date of Holt. They therefore do not constitute prior art as against Holt. The Court of Customs and Patent Appeals stated the basic rule governing the relation back of amendments to patent applications in *In re Lund,* 376 F.2d 982, 988 (1967):

> "[W]here a patent purports on its face to be a 'continuation-in-part' of a prior application, the continuation-in-part application is entitled to the filing date of the parent application as to all subject matter *carried over* into it from the parent application . . . ." (emphasis in original)

By obvious implication, the continuation-in-part application is not entitled to the filing date of the parent application as to matters *not carried over. In re Klesper,* 397 F.2d 882, 885 (C.C.P.A.1968) (explaining that § 102(e) codified prior law which treated the disclosure of a United States patent as prior art as of the filing date of the earliest United States application to which the patent is entitled, provided the disclosure was contained in substance in the earliest application). Since the Prior patent does not constitute prior art as against Holt, Prior does not bar Holt.

Defendant also contends that Examples II and IV of Prior are equivalent to the Holt claims. Defendant has failed to adduce evidence to support this contention. The Court therefore rejects it.

### (2) *The Davis Patent* [38]

Defendant contends that the Davis patent, which discloses a soluble binder, anticipates Holt. Defendant asserts that plaintiff at times has characterized as "insoluble" any material soluble to any degree less than 100 per cent. Under such a definition, according to defendant, the Davis product, which ordinarily is regarded as soluble, may be insoluble. Moreover, according to defendant's argument, even if the Davis product were 100 per cent soluble, a slight difference in solubility must be "obvious" to one skilled in the art and therefore the Davis patent anticipates Holt.

Plaintiff's contention as to the meaning of the term "insoluble" is less than clear. *See* Section VI of this opinion, *supra.* Nevertheless, despite the testimony of Dr. Dalzell, the Court does not understand plaintiff to contend that the term encompasses materials that are as much as 99 per cent soluble. Rather, the limits of insolubility must be determined by the characteristics of the binders specified in Holt. The Court is unwilling to infer that a binder of unknown solubility, although characterized by its inventor as soluble, renders obvious a claim for a class of binders, also of unknown solubility, characterized by their inventors as insoluble.

In any event, the Davis patent, like the Prior patent, was considered and cited by the examiners of Holt. Defendant's ingenious argument, in the view of the Court, has been insufficiently articulated to make any substantial headway against the presumption of validity with respect to prior art which arises in favor of a patent when the prior art is cited by the examiner. *Laser Alignment, Inc. v. Woodruff & Sons, Inc.,* 491 F.2d 866 (7 Cir.), *cert. denied,* 419 U.S. 874 (1974).

### (3) *The Neumann Patent* [39]

The Neumann patent issued in 1949. Unlike the Prior and Davis patents, it was not cited as prior art by the Holt examiners.

Defendant contends that Example III of Neumann discloses a product falling squarely within the claims of the Holt patent. The Court credits the testimony of defendant's expert that the binder disclosed in Example III of Neumann in many respects is similar to the insoluble binders disclosed

---

**38.** The Davis Patent is United States Patent No. 2,793,966, PX 26.

**39.** The Neumann Patent is United States Patent No. 2,477,344, DX 73.

in Holt. Nevertheless, for the following reasons, the Court rejects defendant's contention that Neumann is relevant prior art as against Holt.

First, the products produced by Neumann—pregummed hanging papers, such as wall paper and billboard paper—require that the gummed layer have entirely different "tack" and "slip" properties from those required for label paper.[40] Defendant's expert testified without knowledge of this distinction.[41] The Court is satisfied that a product that would fulfill the purpose of the Neumann patent would not fulfill the purpose of the Holt patent.

Second, Examiner Martin, who processed the Holt application, testified that he had "considered and read Neumann to see if it could be used in the rejection in [sic] the Holt application".[42] The examiner's failure to cite Neumann therefore must indicate that he regarded Neumann as immaterial.

Third, plaintiff has raised a serious question whether Example III of Neumann is useful for any purpose.[43] Defendant has failed to adduce any evidence tending to establish that Example III is workable.

For these reasons, the Court concludes that defendant has not sustained the burden of proving its contention that the Holt patent is invalid because of anticipation by Neumann.

In short, the Court holds that the Holt patent is not invalid under sections 102(e) or 103 because of the disclosures of the Prior, Davis or Neumann patents.

(C) *Definiteness of Claims*

Defendant contends that the Holt patent is invalid under the second paragraph of 35 U.S.C. § 112 (1976) for failing to identify the particular types of PVA and resin that would permit the Holt Examples to be duplicated and for failing to inform the public as to what is and what is not an "insoluble" binder.

Taking up these contentions in reverse order, it will be recalled that in the discussion of the latter point in Section VI of this opinion, *supra,* the Court concluded that the patent's use of the undefined term "insoluble" in itself was not fatal since the limits of insolubility could be inferred from the insoluble binders disclosed in the Examples. Now the Court must consider whether that conclusion can withstand plaintiff's failure to provide any *test* for *measuring* solubility.

Plaintiff contends that the failure to specify a test is unimportant since a person of reasonable skill in the art would know how to devise a test for making the required determination. The evidence, however, suggests that persons skilled in chemistry are likely to apply a variety of tests in determining the water solubility of a substance, and those tests appear to yield widely varying results.[44] Nor has plaintiff shown that the claimed beneficial characteristic of "insoluble" binders—that is, their inherent ability to prevent curling—would assist a person skilled in the gummed paper art in selecting an appropriate test.

A patentee is required to draft his specifications and claims as precisely as the subject matter permits. *Georgia-Pacific Corp. v. United States Plywood Corp.,* 258 F.2d 124, 136 (2 Cir.), *cert. denied,* 358 U.S. 884 (1958). Stated otherwise, "the claims, read in the light of the specifications, [must] reasonably apprise those skilled in the art both of the utilization and scope of the invention ....." *Id.*

Plaintiff does not contend that the term "insoluble", as used in the Holt patent,

40. Holt, Tr. at 1087.

41. Stivala, Tr. at 822–824.

42. PX 143 at 40.

43. PX 29; PX 144 at 3–12.

44. Two important variables seem to be the length of time a test material is immersed in water and whether the test material is a pure sample or a sample containing unknown amounts of the substance (paper) from which it is extracted. *See* the discussion of tests for the solubility of 65–54 binder in this section of the opinion, *supra.*

**830**

is incapable of more precise definition. Nor does solubility appear to be a function of "infinite permutation of variables" which preclude precise definition. *Id.* at 138. In view of the multitude of tests by which solubility may be measured, the Court is unable to conclude that the Holt patent reasonably apprises persons skilled in the art of the scope of the claimed invention. Indeed, it is entirely possible that someone who really wished to respect the patent would have real difficulty in identifying what the claim covers. *Cf. Musher Foundation, Inc. v. Alba Trading Co., Inc.,* 150 F.2d 885, 889 (2 Cir.) (L. Hand, J.) ("It is impossible to suppose that anyone who really wished to respect the patent would have any difficulty in identifying what the claim covered."), *cert. denied,* 326 U.S. 770 (1945).

The issue concerning specification of suitable PVA varieties and certain resins fortunately is less troublesome. The testimony at trial demonstrated that a number of varieties of PVA and resin are available and that some of them probably are unsuitable for purposes of the Holt patent.[45] Nevertheless, the Court finds that a person skilled in the art would not have to engage in "undue experimentation" in order to duplicate the teachings of the Holt patent.[46]

**(D)** *Fraudulent Procurement*

■ Defendant contends that the applicant for the Holt patent failed to disclose to the Patent Office material facts which, had the examiner's attention been drawn to them, would have resulted in denial of the patent. Defendant asserts that each stage of the proceedings leading to the granting of the patent—including the application, the Interference, and the post-Interference ex parte prosecution—was tainted by withholding of material information.[47]

Specifically, defendant contends that the applicants failed to disclose: (1) the lack of reduction to practice of the invention as of the filing date, including both the binder formulation primarily relied upon and the electrostatic method; (2) material negative experimental data concerning the Examples of the alleged invention; (3) the lack of invention by the Holt inventors of the binder formulations containing PVA, the utility of which was learned by the applicants from an existing commercial product; (4) prior public use of the claimed invention; and (5) pertinent prior art references.

Since the Court has held above that the prior art on which defendant predicates fraud did not anticipate Holt, the prior art aspect of the fraud claim requires no further discussion. Similarly, since defendant failed to establish prior public use of insoluble binders, the related aspect of the fraud claim also must fail.

The Court therefore turns to a discussion of defendant's contentions (1), (2) and (3) as stated above:

**(1)** *Reduction to Practice*

The questions underlying this aspect of defendant's fraud claim are, first, whether the Holt inventors had achieved a reduction to practice of their invention as of the filing date of the application, December 17, 1957; and, second, whether the inventors disclosed to the Patent Office all of the information required for determination of the reduction to practice issue.

The duty to disclose information material to the examination of a patent currently is set forth in rule 56 of the United States Patent and Trademark Office, 37 C.F.R. § 1.56 (1980). The rules, adopted in 1977, codify the prior "practice and understanding" of the Patent Office and the prior case law.[48]

**45.** Stivala, Tr. at 526–529.

**46.** Dann, Tr. at 1143.

**47.** Since the alleged failures to disclose overlap somewhat the various stages of the proceedings, the Court will discuss them without relation to particular proceedings in the Patent Office.

**48.** Tr. at 303–306, 333 (testimony of Mr. Dann); Tr. at 580–82 (testimony of Mr. Gottschalk).

## (a) "60–30–10" Binder

In particular, defendant contends that "60–30–10",[49] the binder relied on by plaintiff as the earliest reduction to practice of the Holt invention (August 31, 1956), was not a successful product. In support of this contention defendant refers to certain notes dated September 18, 1954 of William Mase, Esq., patent counsel to Battellee Memorial Institute. Battelle worked cooperatively with Brown-Bridge on a contractual basis in developing the Holt binders. Mr. Mase's notes describe the 60–30–10 formulation as being "of no further interest".[50] In March 1957, a monthly report from Battelle to Brown-Bridge noted several defects in the 60–30–10 binder and stated that it "[did] not appear to be of further interest".[51] Finally, a draft copy of a never-completed "Second Phase Report" from Battelle to Brown-Bridge, also dated March 1957, stated that the resin carbowax binder no longer appeared to be of further interest.[52] It is undisputed that the Holt applicants failed to disclose these matters to the Patent Office.

Plaintiff begs the question when it argues that 60–30–10 must have been reduced to practice as of the filing date because the Patent Office so found. Plaintiff, however, has offered an explanation of Battelle's "no further interest" statements which tends to belie defendant's assertion that the 60–30–10 binder had been abandoned as a failed experiment prior to the filing of the Holt application. Co-inventor Reif testified that as of March 1957 the inventors had discovered that the undesirable qualities of 60–30–10 products were related to atmospheric conditions (humidity) in the manufacturing process and not to the formulation itself.

Once the inventors understood the cause of and solution to the difficulties with 60–30–10, they chose to focus on achieving a higher tack binder rather than on producing the best possible 60–30–10 product.[53] Co-inventor Holt testified to the same effect.[54] In essence, plaintiff contends that the statements that 60–30–10 was "of no further interest" really meant that the binder was of no further interest for present experimental purposes.

While defendant's interpretation of this evidence is not implausible, the Court finds plaintiff's version to be more persuasive since it is supported by the testimony of knowledgeable, credible witnesses. Fraud cannot be predicated on nondisclosure of the statements in question since they have no bearing on whether 60–30–10 had been reduced to practice as of August 1956.

Defendant also contends that "after September of 1956, Brown-Bridge and Battelle made extensive efforts to try to get the 60–30–10 to work",[55] and that the company failed to disclose those efforts. It is true that a Battelle laboratory notebook bearing dates in the fall of 1956 [56] shows experimentation with binders containing resin and carbowax in varying proportions.[57] But continuing experimentation with the ingredients of the 60–30–10 binder could not negate a reduction to practice already achieved. Schnick v. Fenn, 277 F.2d 935, 941 (C.C.P.A.1960) (tests conducted after reduction to practice and directed to perfection of the invention had no bearing on date of reduction to practice). The Patent Office found a reduction to practice based on the 60–30–10 product, not on some variant

49. 60–30–10 binder is composed of 60 parts animal glue, 30 parts resin; and 10 parts carbowax 6,000.

50. DX 68.

51. DX 30.

52. DX 45.

53. Tr. at 1080–82.

54. Tr. at 1097–99.

55. ATr. at 37–38.

56. DX 32.

57. It is of interest that the laboratory notebook in question recites, with reference to an unknown binder, that the first phase "feasibility study" had concluded successfully with the production of a noncurling gummed label comparable to Davac.

thereof. The Court declines to substitute its judgment for that finding.

Defendant further challenges the reduction to practice of 60–30–10 on the basis of a statement in Battelle's draft Second Phase Report,[58] dated March 31, 1957, to the effect that the labels produced in the first phase were inferior to commercial products and that the tack of labels made with a resin carbowax binder was inferior to that of Davac. As stated above, the Second Phase Report was not disclosed to the Patent Office. Defendant's expert, Mr. Gottschalk, regarded this nondisclosure as material.[59] He also regarded as material Brown-Bridge's failure to disclose the Second Phase Report statement that, as of August 1956 [sic, 1955], "little was known about the properties of the coating."[60] Assuming arguendo the correctness of Mr. Gottschalk's characterization of these facts as material, the Court is not persuaded by defendant's contention in this respect for the reason that the facts were disclosed to the Board of Interferences of the Patent Office.[61]

Finally, defendant contends that Brown-Bridge knew that 60–30–10 was unsatisfactory because it tended to become brittle upon aging and that Brown-Bridge failed to disclose that fact. A Battelle report on work done during September 1956 shows that Battelle must have suspected that brittleness was an undesirable quality since the experimenters proceeded to search for a more stable binder. Indeed, the report comments that "ester-type binders may not be satisfactory because of the natural tendency for further polymerization, which causes the binders to become brittle".[62] As to this, plaintiff contends that evidence of the brittleness of 60–30–10 was before the Board of Patent Interferences in the Bat-

telle First Phase Report which stated: "Even the soft binders [including, *inter alia*, 60–30–10] became brittle on aging for two weeks, but it is not known how this affects the labels".[63] This disclosure sufficiently refutes defendant's claim of fraud.

The Court holds that defendant has not demonstrated that 60–30–10 binder becomes brittle when applied in combination with glue to labels[64] or that Brown-Bridge's statement of lack of knowledge of characteristics of 60–30–10, when applied to labels, was false.

### (b) Electrostatic Method

Defendant further contends that Holt had not achieved a reduction to practice of the electrostatic method as of the filing date of the application. The Court declines to rule upon this issue since it is not adequately raised by the underlying infringement claim which is concerned with the product claims of the Holt patent.

### (2) *Other Negative Experimental Data*

Defendant also contends that the Holt applicants failed to disclose to the Patent Office negative experimental data pertaining to binders other than 60–30–10 which are set forth in the Examples of the Holt patent. In particular, defendant asserts that Brown-Bridge knew, but failed to disclose, that the binder set forth in Examples I–III of the Holt patent was unsatisfactory because it toughened on aging; that the binder set forth in Example IV became brittle upon aging; that the binder set forth in Example VII was unsatisfactory in that it could not be combined with animal glue; and that the binder set forth in Ex-

---

58. DX 45.

59. Tr. at 626.

60. Tr. at 628.

The Court agrees with defendant that the statement must refer to August 1956 since Battelle's "First Phase" study—of four month's duration—terminated in August 1956. DX 17.

61. DX 17 at 14; Tr. at 750.

62. DX 21.

63. DX 17 at 14.

64. PX 129 at 81 and DX 219 at 32 suggest that the brittleness characteristic of pure samples of 60–30–10 disappears when it is combined with glue.

ample VIII was of use only in "specialty applications".[65]

Defendant's expert admitted on cross-examination that the binders set forth in Examples VII and VIII are water-soluble and, as such, are irrelevant to the claims of the Holt patent.[66] Apparently defendant contends, as its expert testified, that an applicant may violate the duty of disclosure by withholding from the Patent Office information concerning matters irrelevant to the claims. Defendant has cited no authority for this proposition. The Court declines to so hold.

Plaintiff has not specifically refuted defendant's contentions with respect to the binders set forth in Examples I, II, III and IV. Nevertheless, the Court holds that the evidence adduced by defendant is insufficient to support a finding of fraud. In each instance, the evidence relied on by defendant consists of summary remarks in the Battelle progress reports. As indicated above in discussing the brittleness characteristics of 60–30–10, the Court declines to read too much meaning into these remarks which may suffer from verbal imprecision and which provide little contemporaneous experimental background and no information concerning subsequent events. Defendant failed to develop any amplification of these remarks in cross-examining Messrs. Holt and Reif. The Court is unwilling to draw inferences from these statements which would be unwarranted in light of the record.

### (3) Lack of Invention

Defendant contends that Nashua, not Holt, was the true inventor of binders containing PVA; and that the Holt applicants committed fraud in taking the inventor's oath and swearing that they were the true inventors.

A memorandum[67] written by Reif on June 25, 1957 to another person at Battelle states that Holt had told Reif on that date that Nashua was using PVA in its Davac. The memorandum also suggests that Battelle, at some time prior to June 25, 1957, had experimented with "this sort of material". Holt interpreted the latter statement as meaning that Battelle previously had worked with PVA on a coating for labels.[68] Battelle apparently initiated or renewed its work on PVA binders in July 1957.[69] Reif testified that it was as a result of the information furnished by Holt that Battelle "commenced" experimenting with PVA as a binder candidate.[70] Holt testified that the persons who informed him that Nashua was using PVA probably were mistaken.[71] Holt also testified that Brown-Bridge analyzed Nashua products rather frequently during 1957 and that he believed that he and his co-inventors were the original inventors of the PVA binders disclosed in Examples I, II and III of the Holt patent.

Although conflicting inferences may be drawn from this evidence, on balance the Court holds that defendant has not sustained its burden of proving that the Holt applicants fraudulently represented that they were the original inventors of the binders containing PVA.

## VIII.

### SUMMARY

The parties have raised a number of issues of unusual complexity. The essential ones pertain to the scope and to the validity or invalidity of the Holt patent.

The Court finds that the Holt patent purports to cover both the electrostatic method of manufacturing dry gummed paper and a product used in the production of dry gummed paper. Plaintiff has alleged

65. Defendant relies on DX 21; DX 30; DX 49; DX 52; DX 68; Tr. 609–619 (testimony of Mr. Gottschalk); Tr. 545 (testimony of Dr. Stivala).

66. Tr. at 747–748.

67. DX 65.

68. DX 311 at 179.

69. DX 51.

70. Tr. at 936.

71. Tr. at 1107.

infringement of the product claim only. The Court therefore has limited its analysis of both the infringement and the validity issues to the facts relevant to the product claim.

The Court holds that the product claim for water-insoluble binders is invalid for indefiniteness under 35 U.S.C. § 112 (1976). The Court further holds that the product claim, standing alone, is too vague to permit the Court to measure defendant's accused product against plaintiff's product claim; and plaintiff has failed to adduce evidence which might permit the Court to make a comparison. Accordingly, the Court holds that plaintiff has failed to prove infringement.

The Court also holds that the Holt product claim for insoluble binders was barred from patentability under 35 U.S.C. § 102(g) (1976) because of the prior reduction to practice of a water-insoluble binder by Nashua.

Finally, the Court holds that defendant has failed to prove that the Holt patent was procured by fraud.

In short, the Court holds the Holt patent to be invalid and not infringed.[72]

No costs and no attorneys' fees. *See Kahn v. Dynamics Corp. of America,* 508 F.2d 939, 945 (2 Cir.), *cert. denied,* 421 U.S. 930 (1975).

Settle judgment on ten days notice.

SO ORDERED.

## SUPPLEMENTAL OPINION ON FORM OF JUDGMENT

A judgment has been entered today implementing the Court's initial opinion dated September 14, 1981.

The purpose of this supplemental opinion is briefly to state the Court's reasons for including or excluding certain provisions in the judgment following submission by counsel for the respective parties of alternative forms of judgment pursuant to the Court's directive in its initial opinion to settle judgment on ten days notice.

### I.

### RELEVANT PRIOR PROCEEDINGS

The Brown-Bridge Mills, Inc., now a division of Kimberly-Clark Corporation (collectively "plaintiff" or "Kimberly-Clark"), filed the original complaint in Civ. No. 75–36–B on May 2, 1975 alleging inter alia that plaintiff was the assignee of United States Patent No. 3,202,539 (the "Holt patent") and that defendant Eastern Fine Paper, Inc. ("Eastern") had infringed and would continue to infringe the Holt patent.

By order dated May 10, 1978 and judgment entered thereon May 17, 1978, the Court (Gignoux, J.) on plaintiff's motion dismissed the complaint with prejudice. Plaintiff sought this voluntary dismissal because it had learned through discovery that the binder formulation then used by defendant did not infringe the Holt patent.

Plaintiff filed a second complaint on April 6, 1979 alleging that tests recently performed on new samples of defendant's finished product showed that the binder in use by defendant at that time infringed the Holt patent. Plaintiff sought injunctive relief, actual and punitive damages, reasonable attorneys' fees, and costs. Defendant denied the material allegations of the complaint, interposed several affirmative defenses, and counterclaimed for a judgment of noninfringement and invalidity.

The two actions were consolidated by the Court (Gignoux, J.) at a pretrial conference on June 22, 1979. After another pretrial conference on February 13, 1980, the Court (Mitchell, J.) granted plaintiff's motion for separate trials, with the issues of validity and infringement, which were raised by

**72.** To the extent inconsistent with the foregoing opinion, all motions to strike evidence are denied; all objections to evidence are overruled; and similar rulings are hereby made with respect to any pending motions, objections or other applications.

Although no such matters were pressed by the parties in their post-trial submission, in the interest of completeness and finality of the district court proceedings, this ruling is made.

Count I of the complaint and Count I of the counterclaim, to be tried first. Trial of the issues of patent misuse, unfair trade practices, and antitrust violations were ordered deferred. A bench trial was held in Portland during the period December 8–12, 1980 on the first set of issues. They were disposed of by the Court's opinion of September 14, 1981 (Timbers, J.).[1] The instant supplemental opinion and the judgment entered today are intended to dispose of all issues raised at the first trial.

## II.

### DISMISSAL OF COUNT I OF COMPLAINT AND JUDGMENT ON THE MERITS ENTERED ON COUNT I OF COUNTERCLAIM

The parties are in agreement that Count I of the complaint, in which relief was sought on the basis of defendant's alleged infringement of the Holt patent, should be dismissed in light of the Court's initial opinion. The judgment entered today so provides.

Plaintiff proposes in addition that Count I of the counterclaim, in which declaratory relief of invalidity was sought, also should be dismissed, apparently on the theory that a declaration of invalidity is unnecessary in light of the Court's disposition of Count I of the complaint.

Whatever might be the propriety of such a provision in other cases, dismissal of Count I of the counterclaim here would be inappropriate. Dismissal would leave defendant without necessary relief and with the issue of validity unresolved at the subsequent trial on the remaining issues, including those under the federal antitrust laws. Slip op. at 14. Since disposition of the remaining counts of the counterclaim must rest on a determination of the validity

of the Holt patent, "the question of patent validity presented to this Court is in no sense hypothetical." *Id.* Accordingly, the judgment entered today provides for disposition of Count I of the counterclaim on the merits in accordance with the Court's initial opinion, including a declaration of invalidity.

## III.

### ATTORNEYS' FEES

Eastern's counterclaim included a demand for attorneys' fees.[2]

Attorneys' fees in patent infringement actions are to be awarded only "in exceptional cases". 35 U.S.C. § 285 (1976). The Court must "exercise its sound discretion in deciding whether a case [is] sufficiently exceptional to vitiate the normal rule that each party bear his own attorneys' fees." *Kahn v. Dynamics Corp. of America,* 508 F.2d 939, 945 (2 Cir.), *cert. denied,* 421 U.S. 930 (1975). It is not necessary that the prevailing party prove that the patent in question was procured through fraud. Rather, " 'conduct short of fraud and in excess of simple negligence is also an adequate foundation for deciding that a patent action is exceptional.' " *Id., quoting Monolith Portland Midwest Co. v. Kaiser Aluminum & Chemical Corp.,* 407 F.2d 288, 294 (9 Cir.1969).

The mere fact that a patent is invalid, however, will not support an award of attorneys' fees. A showing of bad faith also must be made. *Garrett Corp. v. American Safety Flight Systems, Inc.,* 502 F.2d 9, 23 (5 Cir.1974); *Metallurgical Exoproducts Corp. v. Pittsburgh Metals Purifying Co.,* 393 F.Supp. 1104, 1108 (W.D.Pa.1975), *aff'd mem.,* 532 F.2d 747 (3 Cir.), *cert. denied,* 429 U.S. 829 (1976).

---

**1.** The Court's initial opinion sets forth a more detailed statement of the procedural history of the case. *Kimberly-Clark Corp. v. Eastern Fine Paper, Inc.,* 559 F.Supp. 815 at 818–819 Civ. No. 79–51–B, slip op. at 2–5 (D.Me. Sept. 14, 1981) [hereinafter cited as "slip op."].

**2.** It is appropriate for the Court to rule now, on the basis of the voluminous record and exten-

sive testimony before it, on the issue of attorneys' fees. Moreover, the question of attorneys' fees in the infringement action is far better determined now, before the judge who presided over the first trial than after a second trial which may never take place and, in any event, may be held before a different judge.

■ In the instant case, of the numerous alternative bases for invalidity asserted by Eastern, the Court found merit only in those founded on prior invention and indefiniteness. Slip op. at 13–33, 824–833. Kimberly-Clark thus had every reason to entertain a bona fide belief in the validity of the Holt patent. The Court finds that at the first trial there was not a sufficient showing of bad faith on Kimberly-Clark's part to justify an award of attorneys' fees. *See, e.g., Hart v. Baarcke,* 396 F.Supp. 408, 416 (S.D.Fla.1975), *aff'd,* 550 F.2d 353 (5 Cir.1977) (invalidity of patent for obviousness will not justify award of attorneys' fees absent bad faith); *Metaframe Corp. v. Biozonics Corp.,* 352 F.Supp. 1006, 1018 (D.Mass.1972) (failure to cite relevant prior art will not justify award of attorneys' fees absent bad faith).

■ An award of attorneys' fees also may be justified if one of the parties has been unnecessarily dilatory in its conduct of the litigation. *True Temper Corp. v. CF & I Steel Corp.,* 601 F.2d 495, 508 (10 Cir. 1979). The Court finds, however, that the instant litigation, despite its lengthy character, was not unduly protracted, considering the circumstances. Plaintiff's voluntary withdrawal of its first complaint after learning that the claims therein were groundless is evidence of its good faith. Moreover, the fact that discovery was conducted under the supervision of three different judges means that some delays may well have been beyond plaintiff's control.

An award of attorneys' fees is within the sound discretion of the district court, "viewing the situation as a whole." *Indiana General Corp. v. Krystinel Corp.,* 421 F.2d 1023, 1033 (2 Cir.), *cert. denied,* 398 U.S. 928 (1970). This Court, after observing the demeanor and testimony of the witnesses, the demeanor of counsel, and on the entire record, concludes that this is not an exceptional case within the meaning of 35 U.S.C. § 285. Defendant's request for attorneys' fees therefore is denied.

**3.** The Court properly may determine sua sponte whether to include in the judgment a Rule 54(b) certification. *McNellis v. Raymond,*

## IV.

## RULE 54(b) CERTIFICATION

■ The Court holds that a certification under Fed.R.Civ.P. 54(b) would be inappropriate in this case.[3]

If the judgment entered today were to be treated as final, thus providing the basis for a piecemeal appeal, prejudice to one or both parties might well result, especially since the adjudicated and pending claims are related and arise from similar factual allegations. Deferring appeal until disposition of the remaining issues at the second trial, on the other hand, will not result in prejudice, hardship, or injustice to either party.

The interests of judicial economy, moreover weigh against a piecemeal appeal here. Under the circumstances of this case, a certification under Rule 54(b), which should be sparingly granted, in the opinion of the undersigned, would be an abuse of discretion. *Cullen v. Margiotta,* 618 F.2d 226, 228 (2 Cir.1980); *Brunswick Corp. v. Sheridan,* 582 F.2d 175, 183 (2 Cir.1978); *Arlinghaus v. Ritenour,* 543 F.2d 461 (2 Cir.1976) ("the required determinations [under Fed.R. Civ.P. 54(b)] 'that there is no just reason for delay' ought not to be made as a matter of rote—even when, as here, there was no objection from the party who would be adversely affected or anyone else."). *See also Gumer v. Shearson, Hammill & Co.,* 516 F.2d 283, 286 (2 Cir.1974) (the Court suggested to the district courts that, "rather than incorporating in the certificate the conclusory language of Rule 54(b), [they should] make a brief reasoned statement in support of [their] determination that 'there is no just reason for delay' and [their] express direction for 'the entry of a final judgment as to one or more but fewer than all of the claims or parties' where the justification for the certificate is not apparent." (footnote omitted)).

For the reasons stated above, the judgment entered today is in the form attached hereto.

287 F.Supp. 232, 245 (N.D.N.Y.1968), *rev'd on other grounds,* 420 F.2d 51 (2 Cir.1970).