## METALLURGICAL EXOPRODUCTS CORPORATION

v.

## PITTSBURGH METALS PURIFYING COMPANY, INC.

Civ. A. No. 73–471.

United States District Court,
W. D. Pennsylvania.

May 30, 1975.

---

Webb, Burden, Robinson & Webb, Pittsburgh, Pa., for plaintiff.

William J. Ruano, Pittsburgh, Pa., for defendant.

## OPINION

GOURLEY, Senior District Judge:

This is a patent infringement proceeding filed by plaintiff and with jurisdiction existing pursuant to 28 U.S.C.A. § 1338(a). The Court has afforded the parties a full and complete trial and has considered the briefs and argument of counsel. Based thereon, it is the considered judgment of the Court that no basis exists for concluding that there has been any infringement by defendant to plaintiff's patent, Patent No. 3,421,-731, issued by the United States Patent Office on January 14, 1969. The Court has arrived at this determination after concluding that plaintiff's patent was invalid, lacking non-obviousness as a matter of law.

The facts may be briefly stated. William H. Koch and George Rocher secured the patent which is the subject of the instant suit by application filed September 1, 1967. The patent involves a Hot Top Maintaining System and shall hereinafter be referred to as the "Koch et al. patent." Plaintiff felt that Claims 1, 3, and 7 of said patent had been infringed by defendant, and said Claims read as follows:

"1. A hot top for an ingot mold and the like, said hot top comprising a plurality of end adjacent preformed

elongated sideboards, means for suspending said sideboards adjacent corresponding wall surfaces of said ingot mold, each of said sideboards having a pair of downwardly and outwardly inclined grooves formed on the inward face thereof and disposed near the ends thereof respectively, whereby the inclination of each pair of grooves on respectively adjacent end portion of said sideboards have a downward convergency, and means insertable into each of said pairs of adjacent grooves and moveable therealong to points of bearing contact with said sideboards adjacent the lower edges thereof for restraining said sideboards flushly against said wall surfaces and for engaging forcefully at least portions of said sideboards adjacent said edges with said wall surfaces to prevent said sideboards from floating when said ingot is poured into said mold.

"3. The combination according to claim 1 wherein said restraining and engaging means include a number of wedge plates, each of said plates being so shaped that insertion of said plates into respective pairs of said adjacent grooves and movement therealong causes increasing forces to be applied to the associated sideboards to press at least the lower edges of said sideboards into close fitting engagement with said mold.

"7. The combination according to claim 3 wherein each of said wedge plates are provided with opposed inclined edges, the inclination of said edges being slightly less than the inclination of said grooves so that said forces are concentrated adjacent the lower ends of said grooves and the lower edges of said sideboards."

It is sufficient for our purposes to know that in the art of steelmaking, the molten steel is poured into an ingot mold to solidify. It is during this solidifying or cooling-off period the ingot tends to contract, forming a central cavity or "piping" within the ingot. When a central cavity is found within the ingot, the steel is not considered useable. To eliminate this piping, thus obtaining as much usable steel as possible, steelmakers have employed the use of "hot tops." The purpose of a hot top is to maintain the steel molten at the upper end of the ingot mold so that it can flow inwardly and downwardly to fill the central cavity.

Since the early 1900's, hot tops of various sizes and forms have been used in the steel industry. Early hot tops were large, integral four-sided structures that were placed either on top or inside the top of an ingot mold. Later, hot tops comprising two sideboards were used. Presently, the trend is to use hot tops comprising four sideboards.

It was found that if a sideboard was not securely held against the wall of the ingot mold, it would float due to the buoyancy force of the molten metal as the metal rises in the mold during the pour. When this occurs, the hot top system is unable to perform its desired function of eliminating the piping, or central cavity.

To resolve this problem of the floating sideboards, plaintiff developed via its Koch et al. patent a ridged Hot Top Maintaining System based on the coaction between inclined, converging grooves in the sideboards and wedge plates. More specifically, the system includes four sideboards having means, such as hangars, for suspending them from the top of an ingot mold wall. Each of the boards has a pair of downwardly and outwardly inclined grooves in it. When the sideboards are installed in the ingot mold, the grooves on the ends of the adjacent sideboards have a downwardly convergency. A metal wedge plate is inserted into the grooves at each of the corners of the mold. It is the coaction between the grooves and the wedges which prevents the sideboards from floating. Furthermore, the wedges tend to expand and hence tighten the sideboards at increased temperature.

It is the considered opinion of this Court that the patent in question, the Koch et al. patent, is invalid; and

thus there is no infringement by the defendant. Plaintiff's patent is invalid because, in the words of the statute 35 U.S.C. § 103:

". . . the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains."

Although the ultimate question of obviousness is one of law, the issue can best be determined in light of three basic factual inquiries: (1) scope and content of the prior art; (2) the differences between the prior art and the claims at issue; and (3) level of ordinary skill in the pertinent art. It is after careful consideration of these three factors that the Court makes its determination that plaintiff's invention lacked "unobviousness." Graham v. John Deere Co., 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966).

The law is quite clear that the presumption of the validity of a patent may be strengthened where the Patent Office has granted it with knowledge of relevant prior art, but the law is equally clear that the presumption of validity is weakened upon a showing of pertinent prior art not considered by the Patent Office. Gaddis v. Calgon Corporation, 506 F.2d 880 (5th Cir., 1975). Quite often pertinent prior art is not considered due to the fact that the Patent Office is too overworked to give adequate attention to patent applications and grants.

One year prior to plaintiff ever filing his application for the patent in question, defendant was issued a patent, Patent No. 3,261,058, hereinafter referred to as the "Tisdale patent." The purpose of defendant's patent was to prevent piping within the ingot mold.

The Tisdale patent employed the use of vertically paralled grooves with tapered bottoms. The trend in the steel industry at the time of the development of this patent was to use two long opposed sideboards without end sideboards. To restrain the sideboards against the mold, either a wedging turnbuckle or wedging spring was employed to move along the tapered bottoms of grooves in the sideboards.

At the time of trial, defendant's expert witness, Blaine R. Helmer, testified that several years before the conception of the Koch et al. patent, he devised, used and sold four-sided systems having downwardly extending grooves adjacent to the side edges of each of the sideboards. He applied restraining means in the form of wedging springs to the lower portion of the grooves of end adjacent sideboards at each of the four corners of the mold to keep the sideboards firmly against the mold during the pouring process. Helmer further testified that it would have been obvious at the time of the Koch et al. patent to use well known wedge plates, instead of Helmer's springs, as the restraining means and have them fit correspondingly shaped grooves in the sideboards.

The law is clear that no presumption of validity will be awarded to a patent where there is evidence that the Patent Office has been misled as to the true import of prior art references. Kahn v. Dynamics Corporation of America, 508 F.2d 939 (2nd Cir., 1975). It is the considered opinion of this Court that no presumption of validity shall be accorded to plaintiff's Koch et al. patent because plaintiff had misled the Patent Office as to the inoperability of the Witt patent. Likewise, the Patent Office was not informed at the time of considering plaintiff's application of the prior public uses of defendant testified to by Helmer and Tisdale and the prior public use of parallel grooves testified to by Rocher.

▄▄▄▄ Furthermore, while the Koch et al. patent solved problems that were "basic" in the sense that they had persisted for a long time and thus seemed to be inherent in the process of steel-making, in the final analysis, plaintiff's invention was merely an obvious combination of old elements. While such secondary considerations as commercial success and long-felt but unresolved needs in the field constitute relevant evidence in a close case on the issue of obviousness, once it is established by prior art references that the difference between the patents in suit and the prior art is not substantial enough to be termed invention, the patent cannot be sustained. Combinations of old elements may be patentable, but such is not the case here.

▄▄▄▄ We now come to the issue of whether defendant, Pittsburgh Metals Purifying Company, Inc., is entitled to an award of reasonable attorneys' fees under 35 U.S.C. § 285. In cases where the Court is convinced that the patent in suit is so wholly devoid of substance that the plaintiff could not have had a bona fide belief in its validity, only then shall it award the defendant reasonable attorneys' fees. Indiana General Corp. v. Krystinel Corporation, 421 F.2d 1023 (2nd Cir., 1970). Notwithstanding that the plaintiff's patent has been determined invalid on grounds of unobviousness, it cannot be said that plaintiff's process was wholly devoid of substance. On the contrary, plaintiff's process resolved a long standing problem in the steel industry. Therefore, although plaintiff was not an inventor, plaintiff was an originator; and as such, defendant is not entitled to attorneys' fees.

Findings of fact and conclusions of law have not been separately stated but are included in the body of the foregoing opinion as specifically authorized by Rule 52(a) of the Federal Rules of Civil Procedure.