**TENNECO CHEMICALS, INC.,**
**Appellant,**

v.

**WILLIAM T. BURNETT & CO.,**
**INC., Appellee,**

**and**

**Reeves Brothers, Inc., Appellee.**

**No. 81–1504.**

United States Court of Appeals,
Fourth Circuit.

Argued Feb. 2, 1982.

Decided Oct. 12, 1982.

Rehearing Denied Feb. 25, 1983.

As Amended March 3, 1983.

---

Caspar C. Schneider, Jr., New York City (Thomas E. Spath, Richard P. Ferrara, Peter H. Bucci, Davis Hoxie Faithfull & Hapgood, New York City, on brief), for appellant.

S. Leslie Misrock, New York City (Stanton T. Lawrence, III, Pennie & Edmonds, New York City, on brief), for appellee Reeves Brothers, Inc.

Alfred W. Breiner, Arlington, Va., for appellee Wm. T. Burnett & Co., Inc.

Before MURNAGHAN, ERVIN and CHAPMAN, Circuit Judges.

CHAPMAN, Circuit Judge:

Appellant Tenneco Chemicals, Inc. brought this action for infringement of its patents by appellees, Reeves Brothers, Inc., and William T. Burnett, Inc. Appellees counterclaimed seeking to declare Tenneco's patents invalid. The district court, at the close of Tenneco's case in chief, granted appellees' motion for involuntary dismissal on the merits, declaring two of the Tenneco patents invalid; a third patent was held not infringed. We affirm in part and reverse and remand in part.

I

Prior to the development of the inventions involved in this case, polyurethane foam had been made in blocks. Liquid chemicals were poured into a rectangular container, where their interaction created a liquid foam which would rise, filling the container. The foam would be allowed to harden resulting in a block that resembled a loaf of bread. The blocks were placed on an axis and rotated against a blade. Thin sheets of foam would be peeled off which were used for carpet padding and garment linings. Because the blocks were not cylindrical, approximately 26% of each block was wasted. This 26% represents the portion of each block that had to be trimmed to obtain a cylindrical shape from which a continuous sheet of foam could be peeled. The patents involved in this case include one owned by Reeves with method and apparatus claims and one owned by Tenneco with apparatus claims, for making cylindrical foam blocks, and Tenneco's product patent for the cylindrical foam blocks themselves.

General Foam, Tenneco's predecessor in interest, developed the apparatus represented by patent # 3,296,658 (hereafter the '658 patent). On December 26, 1963 General Foam applied for a patent on the apparatus, method and product produced. The apparatus and method disclosed in this original application never satisfactorily produced cylinders of foam.[1] After the application General Foam added a "weir" to the apparatus which apparently produced the desired product.

In April 1964, Reeves Bros. applied for a patent for an admittedly different apparatus and method which produced a similar product. In October 1964 General Foam filed a continuation-in-part of its 1963 application to cover the addition of the weir.

On January 10, 1967 Tenneco was issued the '658 patent, covering the apparatus in its 1963 application only. On June 13 of that same year, Reeves Bros. was issued patent # 3,325,573 (hereafter the '573 pat-

---

1. Apparently the foam blocks produced were subject to large cracks in the top during hard-
ening.

ent) covering its apparatus. General Foam, and later Tenneco, continued to seek issuance of a method and product patent by a series of continuations of its original December 1963 application.

In November 1969 Tenneco was issued patent # 3,476,845 (hereafter the '845 patent) for its method of production, based on its November 15, 1965 application which was a division of the October 1964 continuation-in-part of the 1963 application. Finally, and most importantly, Tenneco was issued on April 1, 1975, a product patent, # 3,874,988 (hereafter the '988 patent) for cylindrical foam blocks. It is this patent that Tenneco argues is infringed by the product produced by Reeves Bros. The '988 patent is also based on a division of the October 1964 continuation-in-part which was followed by four separate continuations, the last of which was filed on December 3, 1973.[2] The '988 patent was issued on the December 3, 1973 application.

Conflict among the parties began in April 1975 when Burnett brought an action in the District Court for the Southern District of New York against Reeves Bros. and Tenneco seeking a declaration of invalidity of Tenneco's '658 apparatus patent, '845 method patent and Reeves Bros. '573 apparatus patent. Tenneco then filed an infringement suit against Burnett in Maryland. A third suit was then begun by Reeves Bros. against Tenneco in Maryland, alleging that its '573 patent was interfered with by Tenneco's '845 method patent. The claims in the Southern District of New York were transferred to the District of Maryland. Tenneco filed a counterclaim against Bur-

nett in the transferred action for infringement of its '988 product patent, and filed suit in the Western District of North Carolina against Reeves Bros. for infringement. Reeves Bros. counterclaimed asserting infringement of the '573 patent and invalidity of the '988 patent. Burnett counterclaimed alleging invalidity and Sherman Act violations.

In January 1976 appellees settled their claims against each other. Reeves Bros. agreed to prosecute claims against Tenneco in exchange for $150,000 from Burnett and the granting of a license to Burnett under the '573 patent.

At trial in the District of Maryland the issues were limited to Burnett's infringement of the three Tenneco patents, Burnett's counterclaim as to the validity or non-infringement of those patents, and Reeves Bros.' counterclaim as to invalidity of the '988 patent,[3] which was transferred from the North Carolina court just prior to trial.

Reeves Bros.' attack on the validity of the Tenneco '658 and '988 patents was upheld by the district court.[4] Title 35 U.S.C. § 112 requires patent applications to disclose a sufficient description of the invention to "enable any person skilled in the art to which it pertains . . . to make or use the same . . . ." This is commonly known as the requirement of operability. The '658 apparatus patent application was held invalid as containing an inoperable disclosure. The district court held that the statutory presumption of patent validity[5] does not embody a presumption of operability of the

---

2. On November 15, 1965, Tenneco filed application # 525,782 as a division of the October 2, 1964 continuation-in-part. On January 2, 1968, Tenneco filed application # 695,289 as a continuation of the November 15, 1965 division application. On December 24, 1970, Tenneco filed application # 101,413 as a continuation of the January 2, 1968 continuation. On December 3, 1973, Tenneco filed application # 418,-761 as a continuation of the December 24, 1970 continuation. This application resulted in the issuance of the '988 patent.

3. Remaining to be tried by the Maryland district court is Reeves' interference claim. The Western District of North Carolina retains Tenneco's claim for infringement of the '988 patent by Reeves and Reeves' counterclaim for infringement of its '573 patent.

4. The '845 method patent was held not infringed. This appeal raises issues pertaining only to the court's holding of invalidity as to the '988 and '658 patents.

5. Title 35 U.S.C. § 282.

patent application.[6] Instead, the court, relying on *Cotton de Bennetot v. Becker,* 157 USPQ 62 (1967), declared that patent applications carry a presumption of operability which can be rebutted by a preponderance of the evidence. The court reasoned further that this presumption had been lost by Tenneco because it came forward with evidence and because Tenneco's counsel had expressly assumed the burden during the trial. Tenneco was, therefore, required to prove operability of the application. The court then held that the evidence presented by Tenneco was insufficient to establish operability and that the patent was, therefore, invalid.

Even assuming that a presumption of operability was applicable to the 1963 application, the court noted that such a presumption may be defeated by evidence from the plaintiff's case in chief. *Field v. Knowles,* 37 Cust. & Pat.App. 1121, 183 F.2d 593 (1950).

The '988 product patent was held obvious over three prior U. S. Patents and a prior British patent, and, therefore, invalid under 35 U.S.C. § 103. It was also held invalid as anticipated by Reeves' '573 patent under 35 U.S.C. § 102(e).

■ The district court correctly stated that Tenneco did not initially have the burden of proving non-obviousness because the statutory presumption of validity does embody a presumption that the patent is not obvious over prior art. The court concluded, however, that since it had attempted to prove non-obviousness, by presenting evidence that the four prior patents were based on inoperable applications, it had assumed the burden of proof on non-obviousness. Alternatively, the court concluded that an affidavit submitted to the patent examiner in connection with the December

1973 application was misleading and that the presumption of validity was, therefore, destroyed. Under either approach the district court required Tenneco to prove non-obviousness of the '988 patent over the four prior patents. The court concluded that Tenneco's proof of the inoperability[7] of prior art was insufficient to establish non-obviousness, even though this was the same proof that was before the patent examiner who issued the patent.

The district court also held the '988 patent invalid as anticipated by the Reeves '573 patent. The court held that the '988 patent was not entitled to the December 1963 filing date of the original application. Title 35 U.S.C. § 120 allows a patentee to obtain the benefit of an earlier-filed application if the earlier application contains sufficient disclosure to allow anyone skilled in the art to which it pertains to make and use the later invention as required by 35 U.S.C. § 112. In other words, the earlier application must be operable as to the later invention. Concluding that the presumption of validity does not embody the presumption that a patent relates back to an earlier application, the court held that Tenneco had failed to prove that the December 1963 application was operable to teach one reasonably skilled in the art to make and use '988 cylindrical foam blocks. Because the April 1964 application for the Reeves Bros. '573 patent predates any other application by Tenneco or its predecessor, the court held the '988 patent invalid under 35 U.S.C. § 102(e) as being described in the Reeves Bros. application.

## II
### The '658 apparatus patent

■ Issuance of a patent creates a presumption that it is operable.[8] *Blohm &*

---

**6.** The statutory presumption is rebuttable only by clear and convincing proof. *Tights, Inc. v. Acme-McCrary Corp.,* 541 F.2d 1047, 1054 (4th Cir. 1976).

**7.** Tenneco's approach to the obviousness issue was an attempt to establish that the four prior art patents were inoperable to make '988 foam,

thereby, proving the uniqueness of its own patent.

**8.** The source of the presumption of operability was an issue before the district court. The court held that the statutory presumption, rebuttable only by clear and convincing evidence, does not embody a presumption of operability; but that a presumption found in interference

*Voss AG v. Prudential-Grace Lines, Inc.,* 489 F.2d 231, 240 (4th Cir. 1973). The burden of proving inoperability is, therefore, on the party contesting validity, appellees here. The district court held, however, that the burden of proof on the operability issue had been assumed by Tenneco because it (1) came forward with evidence of operability and (2) expressly assumed the burden of proving operability.

A. Coming forward with evidence.

During discovery Tenneco became aware of Reeves's intention to establish the inoperability of the '658 patent application. Because the '658 apparatus had never been used to make a satisfactory product based on the original disclosure in General Foam's 1963 application, Tenneco conducted two *inter partes* tests to establish operability. The tests were performed purportedly using the state of the art as it existed in 1963. Reeves Bros. objected to both tests claiming Tenneco had failed to exclude all post-application art from the test process.

After a pretrial hearing on the admissibility of the tests, the district court ruled that they could be admitted at trial. Tenneco introduced the tests in its case in chief to establish the operability of the 1963 application to teach one skilled in the art at that time to make and use the '658 apparatus to produce the '988 product. The district court held that coming forward with evidence of the tests (and testimony of witness Buff) in an attempt to prove operability caused Tenneco to lose the benefit of the presumption of operability. Tenneco was, therefore, required to prove operability.

█ It is axiomatic that a presumption is not evidence and disappears in the face of evidence sufficient to rebut it, *Union Pac. RR Co. v. U.S.,* 524 F.2d 1343 (Ct.Cl.1975). It is equally clear that a party may not rely on a presumption when evidence from its own case is inconsistent with the facts presumed. *Field v. Knowles,* 37 Cust. & Pat. App. 1121, 183 F.2d 593 (1950); W. L. Prosser, *Law of Torts,* 4th Ed. § 40 (1971). However, coming forward with evidence not inconsistent with the presumption does not prevent a party from relying on the presumption. Prosser § 40. We do not consider the evidence produced by Tenneco inconsistent with the presumption that the 1965 patent application is operable.

At best Tenneco's evidence is inconclusive. The district court found that the *inter partes* tests and Mr. Buff's testimony did not establish invalidity. The tests were found to be inadequate because they were not accurate reproductions of the 1963 application in accord with the state of the art in 1963. Mr. Buff testified that he had seen round foam produced by '658 teaching prior to 1963. His testimony was discredited by the court as unclear.

Neither of the abovementioned items of evidence is inconsistent with the presumption that the application is operable. By determining that the *inter partes* tests were not properly performed, the court effectively found that they established nothing relevant to the issue of operability. They do not establish operability nor do they tend to disprove it. Mr. Buff's testimony can in no way be construed as inconsistent with a presumption of operability. Tenneco's coming forward with this evidence did not, therefore, destroy the presumption of operability.

█ Moreover, the statutory presumption of validity does not merely shift the burden of coming forward with evidence of invalidity to the party contesting the patent but shifts the ultimate "burden of establishing invalidity" by clear and convincing evidence.[9] The district court's statement that

case law, *Cotton de Bennetot v. Becker,* 157 USPQ 62, 64 (1967), requiring only a preponderance of the evidence for rebuttal, applies. The statutory presumption does, however, appear to extend to operability. *Hercules, Inc. v. Exxon Corp.,* 497 F.Supp. 661, 667, n.53 (D.C. Del.1980); R. Ederer, On Operability as an Aspect of Patent, 42 JPOS 398, 410, 416 (June 1960), (statutory presumption given great weight in infringement cases); *Application of Reynard,* 51 Cust. & Pat.App. 1310, 331 F.2d 625, 628 (1964). And we so hold.

9. Federal Rule of Evidence 301 states:

the purpose of the presumption was merely to shift the burden of production of evidence, and that since plaintiff assumed this burden by introducing evidence no purpose was left to be served by the presumption is, therefore, erroneous. Coming forward with evidence not inconsistent with operability does not, therefore, destroy the statutory presumption.

### B. Judicial Estoppel

At the pretrial hearing on admissibility of the *inter partes* tests Tenneco's counsel made the following argument for their admission:

> Since there is virtually no substantial physical evidence of the results of the work done before the development and adoption of the use of the weer (sic), and, in fact, no efforts to produce the totally contoured round block which is within the limitations of the product, apparatus and method claims, which are an issue in the litigation, without the use of this weer (sic), we believed it was essential to come forward with some hard and fast evidence of operability of the 1963 disclosure.

> \* \* \* \* \* \*

> For this Court to accept Burnett's position and exclude the evidence at this stage of the proceedings would be tantamount to granting a motion for summary judgment and a finding that the 658 patent at least is invalid. Such a ruling would also irreparably damage Tenneco in the presentation of its case in chief.

> \* \* \* \* \* \*

> I believe the statement that is in the record is to the effect that if the operability of the parent application, which we were just talking about, is not demonstrated to the court's satisfaction, that all of the cases, or all of the claims in issue would be held at least unenforcible (sic).

The district court held that Tenneco could not claim the benefit of the presumption of validity because it had asserted in the statements above that it would undertake to prove operability. The court based its holding on the doctrine of judicial estoppel which prevents a party from asserting a position inconsistent with one previously asserted in the litigation where the change would prejudice the other party. *Johnson v. Clark,* 518 F.2d 246 (10th Cir. 1975); *New Amsterdam Casualty Co. v. Waller,* 323 F.2d 20 (4th Cir. 1963). The court has recognized that the doctrine does not prevent parties from asserting a legal theory inconsistent with one asserted earlier in litigation, *New Amsterdam Casualty,* but distinguished the present case from cases where inconsistent legal assertions were allowed stating, "Such situations contain substantive legal claims rather than a means of proceeding."

■ We have found no authority for hinging the application of judicial estoppel on a distinction between substantive and procedural legal theories, and we see no reason to create such a distinction in the present case.

The sole reason put forth for applying the doctrine, thereby creating a substantive/procedural distinction, is appellee's reliance on the misstatements of law by Tenneco's trial counsel. We do not see how reliance on misstatement about a procedural point would be more likely to mislead than reliance on a substantive point and,

RULE 301. Presumptions in General in Civil Actions and Proceedings
In all civil actions and proceedings not otherwise provided for by Act of Congress or by these rules, a presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption, but does not shift to such party the burden of proof in the sense of the risk of nonpersuasion, which remains throughout the trial upon the party on whom it was originally cast.

Congress has, however, provided otherwise as to the presumption of validity in patent cases by shifting the ultimate risk of failing to establish invalidity to the party challenging the patent. 35 U.S.C. § 282 does not, therefore, merely shift the burden of coming forward but also the burden of proof in the sense of the risk of non-persuasion. This burden demands proof by clear and convincing evidence. *Tights, supra.*

therefore, find *New Amsterdam Casualty* indistinguishable.

■ Reliance by an opposing party is not a factor to be considered in judicial estoppel cases. *Duplan Corp. v. Deering Milliken, Inc.,* 397 F.Supp. 1146, 1177–1178 (1975). *Duplan* stated that:

> Equitable estoppel is designed to protect any adversary who may be prejudiced by the attempted change of position. On the other hand, judicial estoppel, or preclusion against inconsistent positions, is designed to protect the integrity of the courts and the judicial process.
>
> \*　\*　\*　\*　\*　\*
>
> The preclusion rule has been held to operate ... irrespective of reliance by or prejudice to the party invoking it. Such use of inconsistent positions would most flagrantly exemplify that 'playing fast and loose with the courts' which has been emphasized as an evil the courts should not tolerate. Id. at 1177–78.

Reliance is, therefore, not the linchpin to application of judicial estoppel; rather the determinative factor is whether the appellant intentionally misled the court to gain unfair advantage. The district court made no finding that an intentional deception took place and we are in no position to ascertain such intention from the record.

Even if appellee's reliance was an important factor we would not apply estoppel in this case. The district court merely stated that appellee relied on the statements in preparation of the case. No findings of fact as to the details of this reliance were made. No findings were made as to how appellees might have been prejudiced by this reliance. To the contrary, however, in oral argument before the present panel appellee stated that it was prepared to produce at least three witnesses on the issue of inoperability,[10] indicating that it had not, in fact, relied upon Tenneco's counsel's mis-statements but had prepared to come forward with evidence to establish inoperability.

■ Even assuming that appellee did rely on appellant's misstatements and was prejudiced thereby, such reliance could never be considered justified. Where factual assertions are concerned, the parties may have unequal access to the particular facts asserted, therefore, justifying some reliance by the non-asserting party. Where a party makes a mistaken assertion of law, however, whether substantive or procedural, the other party is not relieved of being charged with knowledge of controlling law. Especially in areas of specialty, such as patent law, where counsel have equal access to and familiarity with governing principles, one side may not justifiably rely on misstatements of law by the other. Appellee's reliance, if material and if it existed, was not justifiable. We hold, therefore, that judicial estoppel has no effect in this case, and that Tenneco was not estopped to rely on the presumption of operability.

Because we find that Tenneco should have benefited from the statutory presumption of validity on the issue of operability, and that evidence presented by Tenneco was insufficient to establish inoperability, we reverse the holding of the district court as to the '658 apparatus patent and remand for proceedings consistent with this opinion.

## III

### The '988 product patent

■ The district court found that Tenneco had submitted a misleading affidavit to the patent examiner in connection with its 1973 application for the product patent. Specifically the court found:

> The Court does find, however, that plaintiff misled the Patent Office concerning the importance of the prior cited

---

**10.** Also during opening arguments before the district court appellee's counsel stated:

> Now, during discovery in this case, evidence was conclusively adduced by Messrs. Pollock and French and Peterson, the former of two of whom (sic) will be here as live witnesses, Peterson's deposition will be introduced at trial, that the December, 1963, application of General Foam and Tenneco ... was inoperable. (A III–1177).

art. (4) By misleading the Patent Office, plaintiff destroys the presumption of validity which would have attended the patent. *See Metallurgical Exoproducts Corp. v. Pittsburgh Metals Purifying Co., Inc.,* 393 F.Supp. 1104 (W.D.Pa.1975), Aff'd, 532 F.2d 747 (3rd Cir. 1976).

The Chaya affidavit stated that the prior cited references were inoperable. However, the conclusion was based on tests which had not been conducted in a manner which would have given one reasonably skilled in the art a sufficient basis on which to reach the conclusion of inoperability. By stating to the Patent Office that the prior references had been found inoperable, plaintiff represented by implication that sufficient testing had been done to reach this conclusion.

Although certain of these deviations appear in the affidavit, the generalized statements of the affidavit are misleading as to the implications of the deviations.

\* \* \* \* \* \*

Most seriously, the affidavit states that the patents could not be modified to produce acceptable round foam but plaintiff failed to conduct experiments that would have been in line with the patent specifications and examples, and failed to undertake modifications that would have been within the ability of one reasonably skilled in the art. Affidavit at 8 and 12.

Because the Court has found that the misleading representations were made to the Patent Office, the statutory presumption of validity which would require defendants to show by clear and convincing evidence that the patent is invalid, has been destroyed.

Because the district court had the advantage of a six week trial to familiarize itself with the prior art as well as the '988 disclosure it was in a much better position to determine the misleading nature of the affidavit of Mr. Chaya than we are. We cannot see how the above finding is clearly erroneous. Having upheld the district court's finding that Tenneco at least to some degree misled the patent office we

further agree that the presumption of validity was destroyed, *Kahn v. Dynamics Corp. of America,* 508 F.2d 939, 942 (2nd Cir. 1975), *John Deere Co. v. Graham,* 333 F.2d 529, 530 (8th Cir. 1964), *Metallurgical Expoproducts, supra,* leaving Tenneco with the burden of proving the inoperability of prior art patents to produce round foam. On this question the district court concluded that Tenneco's evidence failed to prove non-obviousness of the prior art. This finding as well is not clearly erroneous. We, therefore, agree with the district court that the '988 product patent is invalid as obvious over prior art.

The holding of the district court that the '658 apparatus patent is invalid is reversed and remanded. The court's holding that the '988 product patent is invalid is affirmed.