UNPUBLISHED

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

DELCO STORE #152, INCORPORATED;
DELCO STORE #153, INCORPORATED;
DELCO STORE #155, INCORPORATED;
DELCO STORE #148, INCORPORATED;
DELCO STORE #149, INCORPORATED;
DELCO STORE #150, INCORPORATED;

DELCO STORE #151, INCORPORATED,
Plaintiffs-Appellees,

v.

BILLIE LEA WOODWARD, Executrix of
the Estate of Philip D. Woodward,
Defendant-Appellant.

No. 97-2694

Appeal from the United States District Court
for the Eastern District of North Carolina, at Greenville.
Malcolm J. Howard, District Judge.
(CA-94-39-4-H3)

Argued: December 1, 1998

Decided: March 29, 1999

Before WILLIAMS and MICHAEL, Circuit Judges, and
MICHAEL, Senior United States District Judge for the
Western District of Virginia, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

COUNSEL

ARGUED: Robert Harry Tiller, PARKER, POE, ADAMS & BERN-
STEIN, L.L.P., Raleigh, North Carolina, for Appellant. Trawick

Hamilton Stubbs, Jr., STUBBS & PERDUE, P.A., New Bern, North Carolina, for Appellees. **ON BRIEF:** Warren W. Davis, SANDBERG, PHOENIX & VON GONTARD, St. Louis, Missouri, for Appellant.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

The plaintiffs, closely held corporations (called Delcos) that operate Pizza Hut delivery and carryout stores, were granted a summary judgment determining (1) that they (the Delcos) were not required, under principles of estoppel, to redeem the shares of a deceased one-third owner and (2) that judicial dissolution of the Delcos would not be appropriate. The defendant, who is the administratrix of the deceased owner's estate, appeals, and we affirm.

I.

This case involves what should be done with stock, in closely held corporations, that was previously owned by Philip Woodward, the defendant's deceased husband. For years, Woodward and his two business partners, Keith Thomas and Bernard Butler, each held an equal, one-third share in the Delcos. In addition to the Delcos, the three partners also owned a number of sit-down, or "red roof," Pizza Hut restaurants. When Thomas died in 1995, Butler bought his shares. Thus, this case involves the Delcos, now managed by Butler (the sole remaining partner), and Mrs. Woodward, who represents the interest of her husband's estate in the Delco stock.

This is not the first lawsuit involving Butler and Mrs. Woodward. The disposition of Mr. Woodward's stock in the Pizza Hut ventures has been the focus of litigation for several years. In fact, in the settle-

ment of one case, which involved the "red roof" restaurant operations, the estate received approximately $4 million for Mr. Woodward's shares. The disposition of Woodward's stock in the Delcos remains to be resolved, however. Mrs. Woodward has said that she wants to sell, and the Delcos at one time wanted to buy, the Woodward shares. The parties could not agree on a price, however, and differed on whether the shares were subject to a Stock Redemption Agreement (SRA) the partners had developed in 1980. Specifically, as to the SRA the dispute centered on whether the SRA would dictate the price and terms of any purchase of stock by the Delcos from the Woodward estate.

In an effort to resolve the matter, the Delcos filed suit in the Eastern District of North Carolina against Mrs. Woodward, as executrix. The Delcos sought a declaration that the Woodward stock was subject to redemption under the SRA and requested an order compelling arbitration on valuation. In a counterclaim Mrs. Woodward sought, among other things, a declaratory judgment that the SRA did not apply to the estate's stock, a determination that judicial dissolution was appropriate, compensatory and punitive damages, and an accounting. Notwithstanding her desire to get out of the pizza business, Mrs. Woodward alleged that Butler had tried to shut her out of the Delcos' affairs, that he had denied her financial information, and that he was misusing Delco assets.

In August 1995, several weeks before the scheduled trial date in this case, the Delcos issued additional stock. Butler purchased a number of these shares. Mrs. Woodward (on behalf of the estate), however, declined to buy additional stock, believing that she "should sell the Delco stock and . . . should not become more involved." As a result, the estate's ownership proportion declined considerably. At approximately the same time, the Delcos changed their position in the lawsuit, arguing that the companies were under no obligation to redeem the Woodward stock under the SRA. Following the Delcos' shift in position, Mrs. Woodward filed an additional counterclaim, charging that the doctrine of equitable estoppel precluded the Delcos from changing their position.

When the dispute intensified, the district court appointed a magistrate judge as special master to consider the question of valuation and

3

to deal with other matters, such as discovery disputes. The special master filed his report, in the form of proposed findings of fact and conclusions of law, on February 3, 1997. The special master proposed the following determination: that the estate's interest in the Delcos was worthless; that the SRA did not apply to the estate's shares; that Mrs. Woodward could not, as a matter of law, rely on the doctrine of equitable estoppel; and that judicial dissolution was inappropriate. Thus, according to the special master, the Delcos should be freed of any obligation to redeem the estate's shares.

Shortly after receiving the special master's report, the district court granted Mrs. Woodward judgment as a matter of law "that the SRA does not apply to the [estate's] shares." The Delcos then moved for summary judgment on the remaining issues. The district court granted this motion, concluding "as a matter of law, and in its discretion" that Mrs. Woodward was not entitled to relief on her claim of equitable estoppel and that judicial dissolution was inappropriate. The court noted that in reaching its decision it had not relied on the special master's recommendation on valuation. Specifically, the court said, "[a]lthough Magistrate Judge Dixon went to painstaking lengths to evaluate the parties' contentions regarding the value of the Delco shares and recommended to the court that such value be determined as zero, the determination of the Delco's stock value is not germane to the court's above findings of law."

Mrs. Woodward contends on appeal that the district court (in granting summary judgment to the Delcos) improperly relied on the special master's report, erred in rejecting her equitable estoppel argument, and erred in concluding that judicial dissolution was inappropriate.

II.

Mrs. Woodward first contends that the district court made its summary judgment decision with a "complete lack of .. . foundation," relying blindly on the special master's report. We disagree.

The district court did praise the special master's report, stating that the court could not "envision composing a more soundly drafted and analytically correct decision." In addition, the district court said that it was "not inclined to reinvent the wheel by unnecessarily reiterating

4

the myriad of issues that were fully presented both during the [special master's] trial and since." Despite this praise for the special master's work, the district court was careful to note that it had "conducted an independent and exacting review of [the master's] recommendations." The court was thus careful to note that it had made its own independent judgment, both "as a matter of law, and in its discretion." After reviewing the district court's summary judgment order, we are convinced that the court conducted the required de novo review of the special master's proposed legal conclusions. See Stauble v. Warrob, Inc., 977 F.2d 690, 697 (1st Cir. 1992).

Mrs. Woodward further contends that the district court was indirectly influenced by the special master's proposed finding that the estate's shares were worthless. She insists that the district court did not "realize the relationship between the master's analysis and the other issues in this case." Specifically, she claims that the special master paid scant attention to the legal issues once he had decided that the shares were worthless. Again, our review of the district court's order leads us to conclude that the master's recommendation on valuation did not sway the district court from exercising judgment that was fully independent. Indeed, the district court emphasized that the special master's recommendation on valuation was irrelevant to the court's summary judgment determination.

III.

Mrs. Woodward next argues that the district court erred in granting summary judgment on the issues of equitable estoppel and judicial dissolution. We review a district court's award of summary judgment de novo. See Nielsen v. Gaertner, 96 F.3d 110, 112 (4th Cir. 1996). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

A.

Mrs. Woodward asserts that the doctrine of equitable estoppel bars the Delcos from refusing to redeem her deceased husband's shares.

5

On appeal she says that the district court was wrong to conclude on summary judgment that she "has shown no entitlement to . . . equitable estoppel."

Mrs. Woodward must establish three elements for a claim of estoppel: intentional misrepresentation (or culpable negligence), reasonable reliance, and detriment. See Deal v. North Carolina State Univ., 442 S.E.2d 360, 362 (N.C. App. 1994). Mrs. Woodward alleges that the Delcos intentionally misrepresented several material facts that she relied on to the detriment of the estate. She charges that the Delcos misrepresented that the SRA applied to the estate's shares, that Pizza Hut would not allow her to sell the shares to anyone but Butler, and that the Delcos were not worth much money. All of these misrepresentations, Mrs. Woodward says, prevented her from selling the shares, which have declined in value since this suit was filed. We conclude that Mrs. Woodward's equitable estoppel argument is without merit. Even assuming that the Delcos made the alleged misrepresentations, the undisputed record and controlling case law make clear that Mrs. Woodward did not reasonably rely on any misrepresentations.

Mrs. Woodward first contends that she relied on the Delcos' assertion that the SRA applied to the estate's holdings. Whether the SRA covers the estate's stock, however, is a legal question. A party is not entitled to rely on an opposing party's statements of law. Tenneco Chemicals, Inc. v. William T. Burnett & Co., 691 F.2d 658, 665 (4th Cir. 1982). Thus, although the record may indicate that several months before the suit someone (perhaps in Butler's accounting firm) thought that the SRA did not cover the Delcos, that fact is of no consequence to the question of reliance. In any case, Mrs. Woodward did not rely on the Delcos' position: she contended from the start that the SRA did not apply to the estate's shares.

In a twist on the same argument, Mrs. Woodward argues that she relied on the Delcos' initial indication of interest in buying the shares. To succeed on this claim, however, Mrs. Woodward must show that the Delcos intentionally or negligently misrepresented their initial interest. Mrs. Woodward has proffered no evidence that any initial indication of interest was intentionally or negligently misrepresented.

Mrs. Woodward next contends that she relied on the Delcos' assertion that Pizza Hut would not allow franchise splitting (that is, Pizza

6

Hut would not permit diverse ownership within a franchise area). Thus, according to Mrs. Woodward, she feared Pizza Hut would not allow her to sell the estate's shares on the open market. However, all of the parties, including Mrs. Woodward, were aware, prior to the beginning of this litigation, that Pizza Hut would allow some forms of franchise splitting. Nor is there evidence that Mrs. Woodward sought any clarification from Pizza Hut on this matter. For these reasons, we conclude that Mrs. Woodward was not entitled to rely on the Delcos' statements about franchise splitting.

Finally, Mrs. Woodward argues that she reasonably relied on the Delcos' misrepresentation of the stock's value. But Mrs. Woodward surely did not rely on the Delcos on the important question of value because she developed her own figure with the advice of an expert.

For all of these reasons, Mrs. Woodward's equitable estoppel argument is without merit, and the district court's award of summary judgment to the Delcos on that issue was appropriate.

B.

Finally, Mrs. Woodward claims that the estate is entitled to judicial dissolution under N.C. Stat. § 55-14-30 and that the Delcos should not have been granted summary judgment on that issue either.

In order to obtain an order of judicial dissolution under North Carolina law, a party must show that "liquidation is reasonably necessary for the protection of the rights or interests of the complaining shareholder." See N.C. Stat. § 55-14-30 (1997); see also Meiselman v. Meiselman, 307 S.E.2d 551, 563 (N.C. 1983). Specifically, a plaintiff must show (1) that she had a reasonable expectation that was known or assumed by the other party, (2) that was frustrated (3) through no fault of her own, and (4) that the totality of the circumstances warrants equitable relief. See Meiselman, 307 S.E.2d at 564.

Mrs. Woodward maintains that the estate had a reasonable expectation that it would receive distributions and financial information from the Delcos, that Delco assets would not be pledged without her knowledge or approval, that Delco corporate opportunities would not

7

be squandered, and that the estate would be able to obtain a fair value for her deceased husband's stock. All of these reasonable expectations, she contends, were frustrated by no fault of her own. She says, therefore, that she is entitled to the remedy of judicial dissolution.

Mrs. Woodward's reasonable expectations cannot be judged in a vacuum. Instead, we must evaluate what she reasonably could have expected in light of her relationship with the Delcos (or Mr. Butler) and her stated desire to get out of the pizza business. First, Mrs. Woodward has testified that the estate did not want to remain a Delco shareholder, that she did not want to be an officer or director of the Delcos, and that the estate did not want to purchase any additional stock. In other words, for the most part, Mrs. Woodward (as executrix) had no expectation of obtaining the things she now wants. Second, the Delcos had never issued dividends* or held formal annual stockholder meetings prior to Mr. Woodward's death. In fact, following Mr. Woodward's death, the Delcos held formal meetings to enable Mrs. Woodward to participate. Third, it appears that the Delcos have not frustrated Mrs. Woodward's expectation of receiving fair value for her husband's shares. The estate's expert testified that the shares could be sold to a third party for approximately $500,000 "relatively eas[ily]," and Mrs. Woodward has not shown that that option is no longer available to her. Finally, Mrs. Woodward's assertions that the Delcos misused assets or squandered corporate opportunities are not of sufficient gravity to render judicial dissolution an appropri-

---

*Under North Carolina law the Delcos were unable to issue distributions during the years in question because their financial condition was so weak. North Carolina law provides:

> No distribution may be made if, after giving it effect:
>
> (1) The corporation would not be able to pay its debts as they become due in the usual course of business; or
>
> (2) The corporation's total assets would be less than the sum of its total liabilities plus . . . the amount that would be needed, if the corporation were to be dissolved at the time of the distribution, to satisfy the preferential rights upon dissolution of shareholders whose preferential rights are superior to those receiving the distribution.

N.C. Gen. Stat. § 55-6-40(c) (1997).

8

ate remedy. We therefore affirm the summary judgment denying that remedy.

IV.

The district court's order awarding summary judgment to the plaintiffs is affirmed.

<u>AFFIRMED</u>

9